[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10131
Non-Argument Calendar
_____

Agency No. A206-904-014


ARNOLD KAPA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 12, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Arnold Kapa, a native and citizen of Albania, seeks review of the Board of Immigration Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). On appeal, Petitioner challenges the agency's denial of his applications for relief, arguing that he met his burden of showing that he suffered past persecution and has a well-founded fear of future persecution on account of his political opinion. After careful review, we dismiss his petition in part and deny in part.

## I.    BACKGROUND

### A.    Initiation of Removal Proceedings

In May 2015, Petitioner arrived in the United States without a valid immigration visa or entry document. The Department of Homeland Security ("DHS") subsequently issued Petitioner a notice to appear, charging him with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(1), for being an alien who attempted to enter the United States without a valid entry document. Petitioner conceded removability and indicated that he would be seeking relief in the form of asylum and withholding of removal.

### B.    Asylum Application and Merits Hearing

Petitioner applied for asylum, withholding of removal, and CAT relief, alleging that he feared returning to Albania on account of his political opinion.

2

Specifically, he averred that he had experienced harm and mistreatment in Albania due to his participation in the Democratic Party.

The IJ conducted a merits hearing on Petitioner's application at which Petitioner and his aunt testified.  According to Petitioner, he feared returning to Albania because of his involvement with the Democratic Party.  In 2013, he assisted the Democratic Party with its campaign against the Socialist Party because the Democratic Party promised him a job in exchange for his participation.  The Democratic Party sought out Petitioner's participation in hopes of obtaining the votes of Petitioner's family members.

While walking home from a Democratic Party meeting on June 23, 2013, Petitioner was stopped by four people wearing masks.  They threatened him and his family, and then beat him until he was unconscious.  Two of his friends later found him and took him home.  Because the individuals wore masks, Petitioner could not see their faces but he knew they were civilians.  Petitioner was able to identify one of the attackers by "his voice" as Vetar Lipo, a militant of the Socialist Party at the time of the attack.  He believed that each of the attackers were "active with the government" because of the "nature of [their] threats" and because "they were delivering food in exchange for the poor people's vote for the Socialist Party."

3

As a result of the attack, Petitioner sustained injuries to his chest, leg, hand, and head. The next day, he went to the village doctor, who referred him to the hospital. He did not go to the hospital, however, because he could not afford the treatment. Instead, Petitioner's mother and grandmother treated him with folk medicine.

Following the Democratic Party's loss in the 2013 election, Petitioner's father lost his job. Petitioner learned the day before the merits hearing that his mother had also lost her job. Petitioner stated that his parents lost their jobs following the 2013 and 2015 elections because his family never voted for the Socialist Party. Petitioner feared arrest, torture, and death at the hands of the Albanian police and government, which were controlled by the Socialist Party.

Petitioner's aunt Etleva Lilo testified regarding the June 2013 attack and about the political and economic conditions in Albania. Lilo stated that when her sister, Petitioner's mother, called to tell her that Petitioner had been attacked, her sister explained that Petitioner did not go to the hospital because of political and economic reasons. She further stated that her sister lost her job because she did not vote for the Socialist Party.

### C.    Decisions of the IJ and BIA

The IJ denied Petitioner's applications for asylum, withholding of removal, and CAT relief. At the outset, the IJ found Petitioner to be credible. However, the

IJ determined that Petitioner failed to show that he suffered past persecution. The IJ explained that the mistreatment Petitioner had experienced, including a single beating combined with threats and harassment were insufficient to establish past persecution. The IJ further found that Petitioner had failed to show that the Albanian government was involved in his mistreatment, or that the government was unable or unwilling to protect him. Petitioner had also failed to meet his burden of establishing a well-founded fear of future persecution. Although Petitioner might have a subjective fear of returning to Albania, the IJ determined that based on the evidence, a reasonable person would not fear returning to Albania. Finally, the IJ denied Petitioner's claims for withholding of removal and CAT relief.

Petitioner appealed to the BIA, arguing that the IJ erred in finding that he was not the victim of past persecution on account of his political opinion. In particular, Petitioner argued that the IJ erred by concluding that the 2013 beating did not amount to persecution. Additionally, the IJ erred by finding that Petitioner had not met his burden of establishing a well-founded fear of future persecution, as Petitioner would likely be singled out for persecution based on his membership in the Democratic Party.

The BIA affirmed the IJ's decision. The BIA first determined that Petitioner had failed to establish that he suffered past persecution. The BIA agreed with the

IJ's determination that the 2013 beating was a single, isolated incident that did not rise to the level of persecution.  The BIA further agreed with the IJ's determination that Petitioner had not shown that he was harmed by the Albanian government or that the he was targeted by a group that the Albanian government was unable or unwilling to control.  The BIA also concluded that Petitioner had not met his burden of proof to establish a well-founded fear of future persecution, as the evidence did not support Petitioner's claim that he would be mistreated based on his political opinion.  Finally, the BIA agreed with the IJ's denial of Petitioner's claims for withholding of removal and CAT relief.

## II.    **DISCUSSION**

### A.    **Standard of Review**

We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision, in which case we review both decisions. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 (11th Cir. 2001).  We also review the IJ's decision to the extent that the BIA adopted its reasoning or found the IJ's reasons to be supported by the record.  *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Here, because the BIA issued its own opinion, we review the BIA's decision.  But because the BIA also agreed with several aspects of the IJ's opinion, we review the decision of the IJ to the extent of that agreement.  *See id.*

6

We review our subject matter jurisdiction *de novo*. *Guzman-Munoz v. U.S. Att'y Gen.*, 733 F.3d 1311, 1313 (11th Cir. 2013). We review factual findings for substantial evidence. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under the substantial evidence test, we must affirm a determination "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted). We view the evidence in the light most favorable to the agency's decision, drawing all reasonable inferences in favor of that decision. *Id.* In other words, we cannot overturn a finding of fact unless the record compels it. *See id.* at 1287.

## B.    Asylum and Withholding of Removal

Petitioner argues that he met his burden for establishing eligibility for asylum and withholding of removal because he demonstrated that he suffered past persecution and because he has a well-founded fear of persecution on account of his political opinion.

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who cannot return to his or her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). To establish eligibility for asylum, an applicant must demonstrate either past

7

persecution, or a well-founded fear of future persecution, based on a statutorily listed factor.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

An alien must show that he was persecuted by the government or by a group that the government is unable or unwilling to control.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  When an alien alleges that he was persecuted by a private actor, he must prove that he is "unable to avail himself of the protection of his home country by presenting evidence that he reported the persecution to local government authorities or that it would have been useless to do so."  *Id.* at 950 (quotation omitted).  If the applicant demonstrates past persecution, there is a rebuttal presumption that he has a well-founded fear of future persecution.  *Ruiz*, 440 F.3d at 1257.

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in his country of origin on account of the alien's race, religion, nationality, membership in a particular social group, or political opinion.  *See* 8 U.S.C. § 1231(b)(3)(A).  The burden is on the alien to show a clear probability of future persecution, meaning that it is "more likely than not" that he will be persecuted or tortured if returned to his country.  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

8

1.    Past Persecution

Petitioner asserts that the BIA erred in finding that the mistreatment he suffered, including the 2013 beating did not rise to the level of past persecution. He also argues that the BIA erred in concluding that he failed to prove that he was harmed by the Albanian government or by a group that the Albanian government was unable or unwilling to control.

At the outset, we must determine whether we have jurisdiction to review Petitioner's past persecution claim because we lack jurisdiction to review a particular challenge to a final order unless the alien has exhausted his available administrative remedies by raising that challenge before the BIA. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015). While not an exacting requirement, the alien must go beyond "[u]nadorned, conclusory statements" and have at least "previously argued the 'core issue now on appeal' before the BIA" by providing it "information sufficient to enable [it] to review and correct any errors below." *Id.* (quoting *Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 n.3 (11th Cir. 2008)).

We conclude that we lack jurisdiction to review Petitioner's asylum and withholding of removal claims on the basis of past persecution. Petitioner failed to exhaust his argument that he was unable to avail himself of the protection of the Albanian government because he did not raise any argument in his brief to the BIA

9

challenging the IJ's findings that the record failed to show either that his attackers were government actors or that the Albanian government was either unable or unwilling to protect him from civilian attackers, particularly where he did not report the attack to authorities. *Indrawati*, 779 F.3d at 1297.

Because Petitioner was required to show that he was unable to avail himself of Albania's protection in order to establish eligibility for asylum and withholding of removal, his failure to exhaust this issue to the BIA was fatal to his past persecution claim. *See Ayala*, 605 F.3d at 948. That the BIA *sua sponte* addressed this issue does not change the result. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1251 (11th Cir. 2006) (concluding that this Court lacks jurisdiction over unexhausted arguments even if the BIA addresses them *sua sponte*). And although Petitioner exhausted his argument that the mistreatment he suffered rises to the level of persecution, we nevertheless lack jurisdiction over his past persecution claim because such review would have no effect on the judgment. *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290–91 (11th Cir. 2014) (explaining that even if an issue is reviewable, we lack jurisdiction over that issue where it would have no effect on the judgment). Accordingly, we dismiss Petitioner's argument that the agency erred in finding that he did not suffer past persecution.

10

### 2.    Well-Founded Fear of Future Persecution

Because Petitioner failed to establish past persecution, he is not entitled to a rebuttable presumption of a well-founded fear of future persecution. *Ruiz*, 440 F.3d at 1257. Thus, in order to show a well-founded fear of future persecution Petitioner must show that "there is a reasonable possibility" he will suffer persecution if he returns to Albania. *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009) (emphasis omitted). The fear must be subjectively and objectively reasonable. *Id.* Petitioner "does not have to prove he would be singled out if he can establish a pattern or practice of persecution of a group of which he is a member." *Id.*

Here, the record does not compel reversal of the BIA's finding that Petitioner did not have an objectively reasonable fear of future persecution. The evidence shows that Petitioner remained in Albania without incident for two years after the 2013 attack. Moreover, the U.S. State Department Country Report on Albania showed no reports of politically-motivated killings, disappearances, or beatings or abuse by police.

Therefore, substantial evidence supports the BIA's determination that Petitioner failed to establish a reasonable possibility that he would be singled out for persecution or that there is a pattern or practice of persecution of the group to which Petitioner belongs. *See id.* Because Petitioner failed to meet the less

11

onerous standard to support his claim for asylum, he cannot meet the more stringent burden for withholding of removal. *See Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 823 (11th Cir. 2007) ("Because the record does not compel the determination that there is a reasonable probability that the petitioner[] will be persecuted on account of [his] political opinion, [he] also do[es] not meet the greater evidentiary burden for establishing eligibility for withholding of removal.").

## C.    CAT Relief

Petitioner asserts that the BIA summarily affirmed the IJ's denial of his claim for CAT relief without properly evaluating the evidence showing that it was more likely than not that he would be singled out for torture.

To obtain relief under CAT, an alien must show that it is more likely than not that he would be tortured if returned to his country of removal. 8 C.F.R. § 208.16(c)(2). By arguing that the BIA failed to properly evaluate the evidence related to his CAT claim, Petitioner appears to argue that the BIA failed to give reasoned consideration to his claim. When determining whether the BIA gave reasoned consideration to a petitioner's claims, we look to whether the BIA "consider[ed] the issues raised and announce[d] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (quotations

omitted).  Although the BIA is required to consider all of the evidence presented, we do not require it to specifically address each claim and piece of evidence submitted by the petitioner.  *Id.*

Here, the BIA's determination that Petitioner had not shown that it was more likely than not that he would face torture in Albania reflects reasoned consideration.  "This is not a case where the BIA misstated the contents of the record, failed to adequately explain its rejection of a logical conclusion, or provided an unreasonable justification for its decision that did not respond to an argument in the record."  *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 804 (11th Cir. 2016).  While Petitioner argues that the BIA failed to consider that one of his attackers now works for the Albanian Chief of Police, the BIA was not required to specifically address each piece of evidence.  *See Tan*, 446 F.3d at 1374.  But in any event, the BIA was aware of this fact, as it referenced it in concluding that Petitioner failed to establish that he was harmed by the Albanian government or by a group that the Albanian government was unable or unwilling to control.  In short, the record shows that the BIA considered the evidence presented and announced its decision in terms sufficient to enable us to know that it "heard and thought and not merely reacted."  *See id.* (quotation omitted).

To the extent Petitioner also argues that the record compels reversal of the agency's denial of CAT relief, we disagree.  Because Petitioner failed to establish

13

eligibility for asylum relief, he cannot show that it is more likely than not that he will be tortured if returned to Albania. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) ("Because [Petitioner] has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for . . . protection under CAT."). We therefore deny this portion of the petition for review.

## III. CONCLUSION

We dismiss the petition for review as to Petitioner's past persecution arguments related to his claims for asylum and withholding of removal. We deny the remainder of Petitioner's arguments for the reasons stated above.

**PETITION DISMISSED IN PART, DENIED IN PART.**