[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14226
Non-Argument Calendar
_____

Agency No. A206-734-882

DINA R. GOMEZ DE SANDOVAL,
YARI RAQUEL SANDOVAL-GOMEZ,
ANDREA YAMILETH SANDOVAL-GOMEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 31, 2018)

Before TJOFLAT, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Dina Raquel Gomez De Sandoval and her children seek review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). The BIA concluded that Gomez de Sandoval failed to meet her burden of proof for asylum and withholding of removal because she failed to establish her membership in a particular social group, and even if she did not, she failed to establish a nexus between any persecution she may have faced and any of the enumerated grounds in the Immigration and Nationality Act ("INA"). The BIA also found that she was not eligible for CAT relief because she would not be tortured by or with the acquiescence of Salvadoran government officials. After careful review, we deny the petition.

## I.

Gomez de Sandoval and her daughters, Yari Raquel Sandoval-Gomez and Andrea Yamileth Sandoval-Gomez, are natives and citizens of El Salvador who entered the United States in May 2014. Soon after, the government initiated removal proceedings, charging her as removable for being present in the United States without being admitted or paroled. Gomez de Sandoval conceded

removability and then applied for asylum, withholding of removal, and protection under CAT.

Gomez de Sandoval testified at a hearing before an IJ that she came to the United States with her daughters to escape extortion demands and threats by the Mara-18 gang, which operates throughout El Salvador. She had been a restaurant owner in El Salvador for nearly 20 years. In 2011, in the city of Santa Ana, members of the Mara-18 gang demanded $150 per month in "rent." Gomez de Sandoval refused to pay and instead moved her restaurant to another city, Cara Sucia. After she opened the restaurant in Cara Sucia, members of the Mara-18 gang on two separate occasions, two weeks apart, demanded $200 per month in "rent." The gang members threatened her and her daughters with retaliation— stating that they "knew where her daughters studied, where they walked"—if she did not pay. She and her daughters left for the United States soon thereafter. She testified that she refused to pay extortion money due to her Christian principles.

The IJ issued an oral decision finding her ineligible for relief from removal. In a sympathetic ruling, the IJ found that Gomez de Sandoval was a "very hard working" and "very pleasant lady" who came to the United States "to escape this constant harassment and criminal activity by the gangs." "Unfortunately," the IJ stated, "that is not an asylum case."

3

While the IJ found that Gomez de Sandoval's experiences did not rise to the level of "persecution," the "real problem" with her claim, in the IJ's view, was that she had not shown persecution on account of a statutorily protected ground. Specifically, the IJ found that she was not a member of a "particular social group" under the INA because her asserted social group—small business owners who refuse to pay extortion money—did not meet the BIA's requirements for "particular social groups." Moreover, the IJ explained, her evidence was consistent with acts of private violence or criminal activity, which did not constitute evidence of persecution based on a protected ground. Because she failed to meet her burden for asylum, the IJ found that she necessarily could not meet the higher standard for withholding of removal. Finally, the IJ denied CAT relief, finding no evidence that she would be tortured upon removal by or with the consent or acquiescence of the Salvadoran government.

The BIA affirmed the IJ's decision. The BIA agreed with the IJ that Gomez de Sandoval was not a member of a "particular social group" under the INA. It said that her proposed group was not socially distinct, could not be defined with particularity, and did not possess immutability. The BIA also found unpersuasive her claim of persecution based on an imputed anti-gang political opinion, stating that the IJ's finding that the gang's motives were criminal in nature was not clearly

4

erroneous.  Finally, the BIA agreed with the IJ's denial of her CAT application.  Gomez de Sandoval now brings this petition for review.

## II.

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Where the BIA agrees with the IJ's reasoning, we will review the decisions of both the BIA and the IJ to the extent of the agreement.  *Id*.  Here, because the BIA agreed with the IJ's reasoning as to the particular social group's cognizability, we will review the decisions of both the IJ and the BIA as to that finding but otherwise review only the BIA's decision.  *Id.*

We review de novo, as a question of law, whether an asserted group qualifies as a particular social group under the INA.  *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1286, 1290 (11th Cir. 2014).  We review administrative findings of fact under the substantial-evidence test.  *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1261 (11th Cir. 2004).  Under the substantial-evidence test, we must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Id.* (quotation marks omitted).

### A.    *Asylum and Withholding of Removal*

The government has the discretion to grant asylum if the applicant establishes that she is a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is

5

someone who is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).  One of these protected grounds must be "at least one central reason" for the persecution.  8 U.S.C. § 1158(b)(1)(B)(i).

Similarly, an applicant for withholding of removal must establish that her "life or freedom would be threatened in [her] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).  The applicant must show that it is more likely than not that she will be persecuted on account of a protected ground if returned to her home country.  *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).

Gomez de Sandoval rests her applications for asylum and withholding of removal on two protected grounds: (1) membership in a particular social group; (2) imputed political opinion.  Neither is availing.

A "particular social group" is not defined in the INA, but we have deferred to the BIA's formulation of criteria for determining whether a particular group qualifies.  *Castillo-Arias v. U.S Att'y Gen.*, 446 F.3d 1190, 1196 (11th Cir. 2006). In the BIA's formulation, a "particular social group" has three defining characteristics: (1) immutability; (2) social distinction; and (3) and particularity. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404 (11th Cir. 2016).

6

With regard to "immutability," the group's members must share a common characteristic—other than risk of persecution—that is either immutable or fundamental to their individual conscience or identity. *Castillo-Arias*, 446 F.3d at 1193–94, 1196–97. The risk of persecution alone does not create a particular social group within the meaning of the INA. *Rodriguez*, 735 F.3d at 1310. For a group to have "social distinction," according to the BIA, it must be socially distinct within the society in question—that is, it must be perceived as a group by society in general, not by the persecutors in particular. *Matter of W-G-R-*, 26 I. & N. Dec. 208, 215–18 (BIA 2014); *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (BIA 2014). Finally, regarding the "particularity" requirement, a proposed group must "be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Gonzalez*, 820 F.3d at 404 (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 214).

In evaluating persecution based on political opinion, the relevant question is whether the persecutor is acting because of the victim's actual or imputed political opinion. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004). Evidence that is consistent with acts of private violence, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution on account of a statutorily protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

7

Here, the BIA and IJ correctly determined that Gomez de Sandoval is not a member of a "particular social group" entitled to protection under the INA. Her proposed social group—variably defined as "small business owners," "small business owners who [were] targets of economic extortion," or "entrepreneurial individuals who own small business[es], share common socio/political economic goals, refuse to pay extortion money and are targets of economic terrorism/persecution by [the Mara-18 gang]"—lacks the requisite immutability, social distinction, and particularity.

On its own, owning a small business is not the type of shared characteristic that the BIA considers to be immutable or fundamental to identity or conscience. As the BIA stated in *Matter of Acosta*, "the internationally accepted concept of refugee simply does not guarantee an individual the right to work in the job of his choice." 19 I. & N. Dec. 211, 234 (BIA 1985) (holding that members of a Salvadoran taxi cab cooperative had not "shown that the conduct [they] feared was 'persecution on account of membership in a particular social group'" because they had the power to change jobs). Because Gomez de Sandoval's proposed group is not based on some shared past experience but rather her current choice of profession, the proposed group lacks immutability. *See Melnik v. Sessions*, ___ F.3d ___, ___, 2018 WL 2377798, *5 (7th Cir. May 25, 2018) (proposed group of "business owners targeted for extortion and not protected by the government"

8

lacked a shared, immutable characteristic); *Ochoa v. Gonzales*, 406 F.3d 1166, 1171 (9th Cir. 2005) (proposed group of "business owners in Colombia who rejected demands by narco-traffickers" lacked an "innate characteristic to bond its members").

Other than the characteristic of being "small business owners," the only common characteristic of members of the proposed class is that they are targeted for economic extortion by the Mara-18 gang. But "the risk of persecution alone does not create a particular social group." *Rodriguez*, 735 F.3d at 1310 (quotation marks omitted). Put differently, the fact that small business owners may be convenient targets for extortion is not alone sufficient to show that small business owners are a "particular social group" within the meaning of the statute. *See Melnik*, ___ F.3d at ___, 2018 WL 2377798, *5.

Additionally, Gomez de Sandoval's proposed group is too "amorphous, overbroad, diffuse, or subjective" to meet the particularity requirement.[1] *See Gonzalez*, 820 F.3d at 404; *see Davila-Mejia v. Mukasey*, 531 F.3d 624, 629 (8th Cir. 2008) ("[U]nder BIA precedent, the term 'family business owner' is too amorphous to adequately describe a social group."); *Ochoa*, 406 F.3d at 1171 (holding that Colombian business owners who rejected demands from narcotics

---

[1] In this regard, Gomez de Sandoval's attempt to add the shared characteristic of "common socio/political economic goals" to her proposed group may narrow the group's membership somewhat but does little to correct the fatal indeterminacy of its boundaries.

traffickers are "too broad to qualify as a particularized social group" because "[t]here is no unifying relationship or characteristic to narrow this diverse and disconnected group"). Gomez de Sandoval also presented no evidence that Salvadoran society perceives small business owners as a socially distinct group. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 240, 242.

In any case, even if Gomez de Sandoval was a member of a cognizable social group, the record does not compel a finding of a nexus between any persecution and either her group membership or an imputed anti-gang or anti-violence political opinion. Her refusal to pay extortion money alone is not enough to establish persecution on account of a protected ground. *See Sanchez*, 392 F.3d at 438 ("It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas."); *Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 822 (11th Cir. 2007) (retaliation for petitioner's refusal to pay a war tax to the FARC did not constitute persecution on account of a political opinion). Although she testified that she refused to pay based on her Christian principles, there is no evidence that she communicated this reason, or any reason, to the gang members. Moreover, Gomez de Sandoval's own documentary evidence indicates that, unfortunately, almost everyone in El Salvador who has money, not just small business owners, is subject to extortion by the Mara-18 gang. In sum, substantial evidence supports the BIA's finding that the evidence was merely consistent with

the fact that Gomez de Sandoval had been the victim of criminal activity, which is not evidence of persecution based on a statutorily protected ground. *See Ruiz*, 440 F.3d at 1258.

For these reasons, the BIA and IJ did not err in finding that Gomez de Sandoval was not eligible for asylum or withholding of removal because she failed to establish that any persecution was on account of her membership in a cognizable social group or an imputed political opinion.[2]

## B.    *CAT Relief*

An applicant for CAT relief must prove that it is more likely than not that she would be tortured by, or with the consent or acquiescence of, a public official or person acting in an official capacity upon return to her country. *Najjar v. Ashcroft*, 257 F.3d 1262, 1303 (11th Cir. 2001). Substantial evidence supports the BIA and IJ's finding that Gomez de Sandoval was ineligible for CAT protection. Despite the threats she received, Gomez de Sandoval and her daughters were never physically harmed, and the record contains evidence that the Salvadoran government is attempting to fight the gangs. Therefore, the record does not compel a finding that Gomez de Sandoval or her daughters will "more likely than

---

[2] We need not and do not consider whether Gomez de Sandoval established past or future persecution, which the BIA did not address in any event. *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1369 (11th Cir. 2011) (issues not reached by the BIA are not properly before this Court).

not" be tortured with the consent or acquiescence of the government if they were to return to El Salvador.  *See Antipova*, 392 F.3d at 1261.

Accordingly, we deny the petition for review.

**PETITION DENIED.**