[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10409

_____

Agency No. A200-278-578


BIUMA CLAUDINE MALU,
a.k.a. Bima Claudien Malu,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 19, 2014)

Before TJOFLAT and PRYOR, Circuit Judges, and SCOLA,[*] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable Robert N. Scola, Jr., United States District Judge for the Southern District of
Florida, sitting by designation.

This petition for review presents an issue about exhaustion of remedies that has divided our sister circuits: whether an alien must contest her status as an aggravated felon in an expedited removal proceeding before raising that argument before a federal court of appeals. Biuma Malu argues that she should not have been subject to expedited removal proceedings because she did not commit an "aggravated felony," 8 U.S.C. § 1101(a)(43). Malu also contests the denial of her application for withholding of removal and protection under the Convention Against Torture. She contends that the Board of Immigration Appeals erred when it denied her application. That application alleged that, if she were to return to the Democratic Republic of Congo, she would suffer persecution and torture as a result of her relationship with her uncle and on account of her sexual orientation. Because we conclude that Malu failed to exhaust her argument that she did not commit an aggravated felony, *id*. § 1252(d)(1), and that the Board committed no reversible errors, we deny her petition for review.

## I. BACKGROUND

Malu was born in Kinshasa, Democratic Republic of Congo, and lived there for more than two decades before she fled to the United States in November 2000. When Malu was 11 years old, her parents sold her to her uncle in exchange for a bride price. According to Malu, her uncle, a high-ranking officer in the Congolese military, raped her, impregnated her, put her head in the toilet, urinated on her,

burned her with cigarettes, stabbed her, and pierced her with a screwdriver. By age 12, Malu had aborted three pregnancies. When she became pregnant a fourth time at age 12, her doctor instructed her to keep the baby because she would die if she had another abortion. According to Malu, she miscarried the fourth child during a visit to her parents' home when a group of rebel soldiers invaded the home, killed two of her brothers and two of her sisters, beat her father, and raped Malu and her mother.

Malu escaped the Congo in 2000 when her uncle left her with her parents so that Malu could be circumcised, a procedure also commonly known as female genital mutilation. From the Congo, Malu traveled by boat and by car to Gabon, then Cameroon, and finally to Nigeria. From Nigeria, she traveled by ship to Canada and entered the country using a Nigerian passport. She crossed into the United States in the trunk of the car of her smuggler's cousin. She settled in Georgia, near Atlanta.

When Malu first came to the United States, she married a man, but the two later separated. Malu now identifies as a lesbian and dresses as a man. In 2005, she met her partner, April Milliner, at church. They lived together with Milliner's two twin daughters. Together, they managed a car wash.

While in the United States, Malu committed two crimes in violation of Georgia law. In 2009, the state charged her with cruelty to children after arguing

with Milliner in front of the twin girls. And in 2011, the state charged her with simple battery. The Department of Homeland Security classified her conviction for simple battery as an aggravated felony, *id.* § 1101(a)(43)(F), and initiated expedited removal proceedings, *id.* § 1228.

The Department served Malu with a notice of intent to issue a final administrative removal order, which served as the charging document for her removal, 8 C.F.R. § 1238.1(b)(2). The notice of intent allowed Malu to contest her removability. The notice stated that Malu "must respond to the . . . charges in writing . . . within 10 calendar days" and that her response could "rebut the charges," "request an opportunity to review the government's evidence," "admit deportability," "designate the country to which [she chose] to be removed," and seek withholding of removal or protection under the Convention Against Torture. Malu responded to the notice of intent by checking a box requesting withholding of removal because she feared persecution, but she failed to contest the classification of her crime as an aggravated felony. The Department issued the removal order on September 28, 2011.

After issuing the removal order, an immigration officer conducted a reasonable fear interview and concluded that Malu expressed reasonable fear of persecution and torture if she were to return to the Congo. The officer concluded that Malu suffered past persecution and had a reasonable fear of future persecution

4

on account of her membership in a particular social group: Congolese women viewed as property by virtue of their position as wives. The officer further concluded that Malu established a reasonable fear of torture because she is a lesbian. The officer referred Malu's case to an immigration judge to decide whether Malu was entitled to withholding of removal or protection under the Convention Against Torture.

Malu appeared *pro se* before the immigration judge, who denied her application. Both she and Milliner testified. She also submitted evidence about Congolese society and government, in addition to letters authored by Malu and her friends explaining Malu's past and her role in her Atlanta community. The immigration judge discredited Malu's testimony that she was a Congolese national. The immigration judge also ruled that, even if she could prove her nationality, she failed to corroborate her allegation of past persecution with a reasonably obtainable medical evaluation of her scars, evidence establishing the identity of her uncle, and evidence substantiating her family's horrific encounter with the rebel soldiers. The immigration judge also found that Malu would not suffer future persecution in the Congo on account of her sexual orientation.

Malu appealed to the Board of Immigration Appeals, which dismissed her appeal. The Board agreed with the immigration judge that Malu failed to corroborate her allegations of past persecution and could not establish future

persecution. But the Board refused to adopt two conclusions of the immigration judge: the Board did not adopt the immigration judge's rejection of Malu's purported nationality and did not adopt the immigration judge's conclusion that the Department rebutted a presumption that Malu would suffer future persecution. The Board explained that these determinations by the immigration judge, even if in error, were not necessary to the disposition of Malu's case.

## II. STANDARD OF REVIEW

We review issues of jurisdiction and issues of law *de novo. Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006); *De Sandoval v. U.S. Att'y Gen.*, 440 F.3d 1276, 1278 (11th Cir. 2006). We review only the decision of the Board of Immigration Appeals, except to the extent that the Board "expressly adopts the [immigration judge's] opinion." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

## III. DISCUSSION

Malu presents three arguments to our Court. She first argues that the Department incorrectly classified her conviction for battery as an aggravated felony. She then asks us to overturn certain factual findings by the immigration judge and the decision by the Board that she would not be persecuted or tortured if she were to return to the Congo. Finally, she contends that the Board committed errors of law when it denied her application.

6

We divide our discussion in five parts. First, we conclude that we are powerless to consider Malu's argument that her conviction for simple battery does not qualify as an aggravated felony because she failed to contest the only ground for her removal before the Department. Second, we explain that we will not review alleged errors by the immigration judge that the Board did not expressly adopt. Third, we explain that the REAL ID Act bars us from considering issues of fact raised by Malu, a criminal alien. Fourth, we conclude that the Board committed no legal error when it rejected Malu's application for withholding of removal. And fifth, we conclude that the Board committed no legal error when it rejected Malu's application for protection under the Convention Against Torture.

### A. We Lack Jurisdiction to Consider Malu's Argument that She Is Not an Aggravated Felon Because Malu Failed to Exhaust that Argument.

For the first time, Malu contests the basis for the expedited removal proceedings initiated against her. She argues that she should not have been subjected to expedited removal proceedings because her prior conviction for simple battery, Ga. Code § 16-5-23(a)(1), does not qualify as an "aggravated felony," 8 U.S.C. § 1101(a)(43)(F). Malu contends that the decision of the Supreme Court in *Johnson v. United States*, 559 U.S. 133, 130 S. Ct. 1265 (2010), abrogated our prior precedent, which classified simple battery as a violent felony.

The Attorney General urges us not to consider this argument on the ground that Malu failed to exhaust it when she declined to contest the notice of intent, *see*

8 U.S.C. § 1252(d)(1), but Malu asks us to ignore her failure to exhaust for three reasons. First, she contends that there was no available remedy when she received the notice of intent because binding Circuit precedent held that her conviction for simple battery was an aggravated felony. Second, she contends that the law does not require that she exhaust specific issues in the earlier proceedings, but instead that she only complete each step of the administrative process. Third, she contends that she was not afforded reasonable administrative process because the notice of intent did not expressly state that she could contest the classification of simple battery as an aggravated felony. We discuss each of these arguments in turn.

Malu's assertion that binding Circuit precedent foreclosed an argument that her conviction was not an aggravated felony is a nonstarter. The Department issued the notice of intent on September 15, 2011. But the Supreme Court decided *Johnson*, the decision that Malu contends abrogated our Circuit precedent, more than a year earlier on March 2, 2010. Had Malu argued that her conviction was not an aggravated felony, an immigration judge would have not only considered *Johnson*, but also would have been bound by *Johnson* to the extent that decision conflicted with our prior precedent.

For her second argument, Malu relies on a decision of the Supreme Court involving the Social Security Administration, *Sims v. Apfel*, 530 U.S. 103, 120 S. Ct. 2080 (2000). She contends that under *Sims* she had to exhaust only the

8

administrative remedies available to her. In *Sims*, the Supreme Court distinguished a requirement that a petitioner ask an administrative agency for relief before filing her action in a federal court—exhaustion of remedies—from a requirement that a petitioner raise specific issues before the agency before raising those issues in federal court—exhaustion of issues. *Id.* at 107, 120 S. Ct. at 2083. The Court stressed that whether a petitioner must exhaust remedies versus particular issues is agency-specific. *Id.* at 107–08, 120 S. Ct. at 2084 (noting that the requirements are "largely creatures of statute" and that some agency regulations require issue exhaustion). The Court also noted that it has sometimes imposed a requirement that petitioners exhaust all arguments available to them at each stage of the administrative proceeding and that the rationale for such a requirement "is at its greatest" in adversarial administrative proceedings. *Id.* at 108–10, 120 S. Ct. at 2084–85.

*Sims* does not help Malu. The statute that governs this petition, the REAL ID Act, required Malu to "exhaust[] all administrative remedies available to [her] as of right." 8 U.S.C. § 1252(d)(1). But Malu failed to do so because she failed to contest the *only* ground for her expedited removal: whether her prior conviction for simple battery was an aggravated felony. At her adversarial proceeding, Malu conceded her removability and applied for withholding of removal. We are not now at liberty to reconsider the underlying basis for her expedited removal. *Id.*

Malu's third argument—whether she was afforded reasonable administrative process to contest the grounds for removal—presents a more difficult question, and one on which the federal courts of appeals have split. Malu argues that the notice of intent did not clearly explain that she was permitted to contest the classification of her conviction as an aggravated felony. She relies on a decision of the Fifth Circuit, *Valdiviez-Hernandez v. Holder*, 739 F.3d 184 (5th Cir. 2013), which held that the administrative remedies available to an alien after the Department serves her with a notice of intent are remedies that resolve only *factual* deficiencies, not *legal* issues. *Id.* at 187 ("[T]he relevant regulations indicate that the response process is geared toward resolving only issues of fact."). Malu also relies on a decision of the Seventh Circuit, *Eke v. Mukasey*, 512 F.3d 372 (7th Cir. 2008), which stated that the court of appeals could consider whether the Department correctly classified the immigrant as an aggravated felon. *Id.* at 378. But *Eke* stands, at least, in tension with another decision of the Seventh Circuit, *Fonseca-Sanchez v. Gonzales*, 484 F.3d 439 (7th Cir. 2007), in which the court considered the exhaustion requirement of the REAL ID Act, 8 U.S.C. § 1252(d)(1), and decided that it did not have jurisdiction to review an alien's objection to an order of removal because she failed to respond to the notice of intent. *Id.* at 443–44. The Eighth Circuit too has ruled that the courts of appeals lack jurisdiction to consider an issue that an immigrant raises for the first time on appeal instead of in his

10

response to the notice of intent. *Escoto-Castillo v. Napolitano*, 658 F.3d 864, 866 (8th Cir. 2011).

We reject the decisions of the Seventh Circuit in *Eke* and the Fifth Circuit in *Valdiviez-Hernandez*. In *Eke*, the court failed to mention, let alone cite, the exhaustion provision, and the government failed to raise the issue in its brief. 512 F.3d at 378. The Seventh Circuit avoided the jurisdictional issue on the ground that the parties had briefed the merits. *Id*. And the Fifth Circuit gave short shrift to other regulations governing removal. The Fifth Circuit decided it had jurisdiction to review an unexhausted issue of law based on an agency regulation, 8 C.F.R. § 238.1(d)(2)(i), (ii), which provides that removal decisions shall be subject to further review if an alien's response to the notice of intent raises a genuine issue of material fact. *Valdiviez-Hernandez*, 739 F.3d at 187. But the Fifth Circuit failed to take notice of the next provision, *id*. § 238.1(d)(2)(iii), which states that an officer may transfer removal proceedings to an immigration judge if the alien objects to the notice of removal on the ground that she is "not amenable" to the expedited removal proceedings. Whether an alien is amenable to expedited removal proceedings could involve either an issue of law or fact. Moreover, as the Attorney General highlights, the regulations make clear that the charges in the notice of intent include both "allegations of fact and conclusions of law" that the alien may rebut. *Id.* § 238.1(b)(2)(i). In this expedited proceeding, it would be nonsensical to

11

limit the alien's rebuttal to allegations of fact, but save for later any rebuttal to conclusions of law. Instead, an alien must exhaust all administrative remedies by rebutting the charges—including the conclusion of law that she is an aggravated felon—before the Department.

We agree with the Seventh Circuit in *Fonseca-Sanchez* and the Eighth Circuit in *Escoto-Castillo* and conclude that Malu could have but failed to exhaust the argument that she was not an aggravated felon. The REAL ID Act provides that "[a] court may review a final order of removal *only if* . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d) (emphasis added). The notice of intent charged that Malu was deportable because she was convicted of an aggravated felony. And in the notice of intent, the Department afforded Malu an opportunity to respond to that "charge" within 10 days of her receipt of the notice of intent. She also could have submitted documents rebutting the decision of the Department to remove her, but she failed to do so. As a result, Malu failed to "exhaust[] all administrative remedies" available to her. *Id.*

### B. We Will Not Review Findings by the Immigration Judge that the Board Did Not Adopt.

Malu argues that the immigration judge erred when he found that she was not a native of the Congo, but we decline to revisit that factual finding because the Board expressly declined to adopt it. We review only the decision of the Board,

12

except when the Board expressly adopts the reasoning of the immigration judge. *Al Najjar*, 257 F.3d at 1284. The Board made clear in its decision that it would "not address [Malu's] argument that the Immigration Judge erred by finding that [she] did not sufficiently demonstrate that she is a native and citizen of the DRC." It doubted that finding by "not[ing] that on the Notice of Intent to Issue a Final Administrative Removal Order, the [Department] charged that [Malu] was a native and citizen of the DRC." Any finding by the immigration judge about Malu's nationality is not a ground for reversal.

### C. We Lack Jurisdiction To Consider Questions of Fact Because Malu Is a Criminal Alien.

The REAL ID Act bars courts of appeals from reviewing final orders of removal against criminal aliens, 8 U.S.C. § 1252(a)(2)(C), but excepts "constitutional claims or questions of law" from this jurisdictional bar, *id.* § 1252(a)(2)(D). *See Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1231–32 (11th Cir. 2013). We lack jurisdiction, for example, to review factual findings that an alien is unlikely to endure persecution. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1280–81 (11th Cir. 2009). We also lack jurisdiction to reweigh the evidence that the agency considered. *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 534 (11th Cir. 2013). But we retain jurisdiction to review a petition that challenges "the application of an undisputed fact pattern to a legal standard," which is a legal question. *Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1322 (11th Cir. 2007). For example, whether an

13

undisputed set of facts amounts to "torture" or whether the Board failed to give reasoned consideration of an alien's claim are both reviewable questions of law. *Id.* at 1322, 1326.

Because Malu committed an aggravated felony, *id.* § 1227(a)(2)(A)(iii), we lack jurisdiction to review the errors of fact that she alleges in her brief. *Id.* § 1252(a)(2)(C). Malu contends that this jurisdictional bar does not apply to her request for protection under the Convention Against Torture, but our Circuit precedent says otherwise. *See Perez-Guerrero*, 717 F.3d at 1231; *Cole*, 712 F.3d at 532–33. Malu asks us to review the factual findings that she failed to establish a clear probability of future harm from her uncle or on account of her sexuality, but we cannot. *Singh*, 561 F.3d at 1280–81 ("[W]e may not review the administrative fact findings of the [immigration judge] or the [Board] as to the sufficiency of the alien's evidence and the likelihood that the alien will be tortured if returned to the country in question."). She also asks us to review the finding that corroborative evidence was reasonably obtainable, but that too is a question of fact. *See* 8 U.S.C. § 1252(b)(4) ("No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a *reasonable trier of fact* is compelled to conclude that such evidence is unavailable." (emphasis added)). The only relief available to Malu, a criminal alien, is relief predicated on errors of law, not errors of fact.

14

*D. The Board Committed No Reversible Error When It Denied Malu's Application for Withholding of Removal.*

Malu argues that the Board erred as a matter of law when it denied her application for withholding of removal. An alien who seeks withholding of removal must establish that her life or freedom would be threatened because of her race, religion, nationality, membership in a particular social group, or political opinion if she were to return to her country. 8 U.S.C. § 1231(b)(3)(A); *see Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1277 (11th Cir. 2009). The alien must establish that she will "more-likely-than-not" face persecution upon her return. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

Malu argues that her membership in two social groups will subject her to persecution if she returned to the Congo. First, she contends that her membership in the group of Congolese wives, who are viewed as property because of their domestic relationships, led to torture by her uncle in the past and would lead to torture by her uncle in the future if she were to return to the Congo. Second, she contends that she would be subject to future persecution if she were to return to the Congo because of her sexual orientation. We review each of these arguments in turn.

15

1. Whether Congolese Wives Viewed as Property on Account
of Their Domestic Relationships Are a Particular Social Group Is Not Justiciable.

The Board denied Malu's application, in part, because Congolese wives treated as property because of their domestic relationships are not a particular social group. It concluded that Congolese wives viewed as property are not readily identifiable in Congolese society and, as a result, do not constitute a particular social group. But the Board found, in the alternative, that even if these Congolese wives constitute a particular social group, Malu failed to prove that her uncle was still alive or that he would know she reentered the Congo.

Although ordinarily we would have jurisdiction to review whether Congolese wives viewed as property constitute a particular social group because that is a question of law, 8 U.S.C. § 1252(a)(2)(D); *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006), we cannot do so here lest we provide an advisory opinion. *Cf. Herb v. Pitcairn*, 324 U.S. 117, 126, 65 S. Ct. 459, 463 (1945) ("[O]ur power is to correct wrong judgments, not to revise opinions. We are not permitted to render an advisory opinion, and if the same judgment would be rendered by the state court after we corrected its views of federal laws, our review could amount to nothing more than an advisory opinion."). Even if we were to assume for the sake of argument that these Congolese wives share an immutable characteristic and are socially visible, *Castillo-Arias*, 446 F.3d at 1196–98, the Board decided, as a matter of fact, that Malu failed to prove that she more likely

16

than not would be persecuted in the future on account of her membership in that group. We lack jurisdiction to review that factual finding. *See* 8 U.S.C. § 1252(a)(2)(C); *see also Singh*, 561 F.3d at 1280–81.

Relatedly, Malu argues that the immigration judge erred when he required her to establish that the circumstances in the Congo had not changed, but that mistake is not reviewable. Malu is correct that it would not be her burden to establish that the circumstances in the Congo had not changed since she left if she established that she had suffered past persecution. A presumption of future persecution attaches once an alien establishes that she has suffered past persecution. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351–52 (11th Cir. 2009). The Department then bears the burden of rebutting that presumption and must establish, by a preponderance of the evidence, that the country conditions have changed such that there is no longer a well-founded fear of persecution. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A)–(B). But the Board expressly refused to adopt the burden-shifting portion of the immigration judge's order. The Board declined to address that issue because Malu failed to establish past persecution. And, because she failed to establish past persecution, Malu was not entitled to a presumption of future persecution. Because the Board did not expressly adopt this portion of the immigration judge's order, we do not review it. *See Al Najjar*, 257 F.3d at 1284.

17

2. The Board Committed No Legal Error in Its Decision about the Treatment of Homosexuals in the Congo.

Malu contends that the Board misapplied the legal standard of "persecution," selectively viewed undisputed evidence about the treatment of homosexuals in the Congo, and failed to give reasoned consideration to her claim that she would suffer persecution on account of her sexual orientation. We lack jurisdiction to review the factual finding that Malu would not suffer future persecution in the Congo on account of her sexual orientation, which includes arguments about the weight of the evidence. But we retain jurisdiction to review "the application of an undisputed fact pattern to a legal standard" and whether the Board failed to give reasoned consideration to Malu's claims. *Jean-Pierre*, 500 F.3d at 1322, 1326.

The legal standard for persecution is settled. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks omitted). An alien must establish that the government would be her persecutor or that the government would be unwilling or unable to protect her from persecution by a private actor. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007).

Neither the immigration judge nor the Board selectively reviewed the incidents of harassment or intimidation of homosexuals in the Congo. Instead, the immigration judge acknowledged that Malu submitted evidence about the

18

treatment of homosexuals in the Congo. The immigration judge highlighted that homosexual activity is not prohibited by law, but that there are no anti-discrimination laws to protect homosexuals. The immigration judge found that "there is nothing in the record to show that the absence of such laws incites DRC citizens to harm homosexual individuals." The immigration judge acknowledged that the evidence from the Immigration and Refugee Board of Canada stated that homosexual relationships could be criminalized under the public decency provision of the penal code, but that the same evidence stated that such prosecutions are "very rare." The immigration judge found no evidence that "mention[ed] . . . specific instances of prosecution." Moreover, no evidence established that state police perpetrated or condoned violence against lesbians. The immigration judge correctly stated that, as a matter of law, evidence of harassment by state security forces alone cannot amount to persecution. *See Sepulveda*, 401 F.3d at 1231.

The immigration judge also considered evidence about private citizens' harassment and violence toward homosexuals, but found that the evidence did not amount to state-sponsored persecution. The immigration judge highlighted, as an example, that authorities prevented a mob lynching of a homosexual woman. The immigration judge did not consider this mob lynching in isolation, but instead used it as an "example" that "the record shows that the government of the DRC is not, in fact, unable or unwilling to control private actors who mistreat members of

[Malu's] asserted social group." Likewise, when the Board adopted the findings of the immigration judge, the Board found that prosecution of homosexual relationships is "very rare" and that homosexual activity is not prohibited by law.

The Board did not err as a matter of law when it found that Malu failed to establish that she more likely than not would be persecuted. Malu has not directed us to any evidence in the record that would constitute persecution that the Board failed to consider. And the combined evidence about the treatment of homosexuals in the Congo does not compel a finding of "persecution," which is "extreme" and requires more than isolated incidents of harassment or intimidation. *Id.*

We reject Malu's contention that the agency failed to give reasoned consideration of her evidence of future persecution on account of her sexual orientation. Neither the immigration judge nor the Board had to address each piece of evidence presented by Malu. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006). Both the immigration judge and the Board considered the evidence Malu presented and announced their decisions in terms sufficient to enable our Court to perceive that they "heard and thought and not merely reacted." *Id.* (internal quotation marks omitted). The Board fully considered Malu's claims, and Malu fails to point to any additional evidence that the Board should have considered.

20

The related argument of the *amici curiae*, the National Center for Lesbian Rights and other groups, also fails. The *amici* contend that the Board failed to give reasoned consideration to the fact that Malu is gender nonconforming. But Malu asked neither the immigration judge nor the Board to consider whether gender nonconforming adults would be persecuted in the Congo. Instead, Malu identified herself as part of the social group of Congolese lesbians. Both the immigration judge and the Board fully considered Malu's evidence about that social group and rejected Malu's argument that she more likely than not would be subject to persecution.

### E. The Board Did Not Err as a Matter of Law When It Denied Malu Protection Under the Convention Against Torture.

Malu asks for protection under the Convention Against Torture based on the same facts that predicated her application for withholding of removal. To qualify for protection under the Convention Against Torture, an alien must establish that she "more likely than not" will be tortured "at the instigation of or with the consent or acquiescence of" government authorities if removed to her home country. *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004); 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1). Malu argues that the Board accurately recited that legal standard but offered no analysis.

21

Malu's argument fails to appreciate that, before deciding whether she was entitled to protection under the Convention Against Torture, the Board exhaustively discussed her application for withholding of removal based upon the same set of facts. The Board "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1332 (11th Cir. 2011) (internal quotation mark omitted). After the Board's discussion of Malu's application for withholding of removal, the Board adequately considered Malu's request for protection under the Convention Against Torture and announced its decision in terms sufficient to enable review. *Id.* The immigration judge too acknowledged that Malu alleged that she had suffered physical abuse at the hands of her uncle, but concluded that Malu failed to establish that her uncle committed these acts in his official capacity as a government official for the Congo or that he had any interest in torturing her in the future. And having already concluded that the Congolese government would not acquiesce to persecution from private actors, the immigration judge also concluded that the Congo would not consent to the torture of Malu at the hands of private actors based on her sexual orientation.

## IV. CONCLUSION

We **DENY** Malu's petition for review.

22