[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14098
Non-Argument Calendar
_____

Agency No. A208-902-636
_____

ALBA R. ACOSTA REYES,
ULISES OSMIN MALDONADO-ACOSTA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 18, 2019)

Before WILSON, ROSENBAUM, and HULL, Circuit Judges.

PER CURIAM:

Alba Rosa Acosta Reyes and her minor son, Ulises Osmin Maldonado-Acosta, seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her application for asylum and withholding of removal. Acosta Reyes[1] argues that the BIA erred in finding that she failed to show that she had been persecuted on account of either her membership in a particular social group or her political opinion. She argues that her proposed group—victims of extortion and attempted extortion by the El Salvadorian gangs, the "Maras"—was sufficiently particular and explicitly tied to the reason that she was threatened.

## I.    Background

Acosta Reyes and her son are natives of El Salvador. In early March 2016, while still in El Salvador, a man dressed in black with a mask over his face came to Acosta Reyes's house. She identified him as a member of the El Salvador gangs, or "Maras." He asked her for money, and she told him she did not have any. The man responded, "you better find a way to pay me, and if you do not I will kill you, your son, and your mother." He said he would return for the money. Acosta Reyes testified that she was afraid for her and her son's lives. While this was the first time

---

[1] Acosta Reyes's son was joined as a derivative to the asylum application, pursuant to 8 U.S.C. § 1158(b)(3). Therefore, Maldonado-Acosta's asylum eligibility is based upon his mother's claim. *See* 8 U.S.C. § 1158(b)(3)(A). For clarity and readability, this opinion groups together Acosta Reyes and Maldonado-Acosta and does not differentiate between the two.

2

the Maras came to Acosta Reyes's house, the Maras had approached the ten other houses in her neighborhood before. She did not report the incident to the police because she believed they would not help. Additionally, she did not attempt to relocate within El Salvador.

Acosta Reyes and her son left El Salvador for the United States a few days later. The two entered the United States near Roma, Texas, without visas on March 24, 2016. Subsequently, the Department of Homeland Security issued Acosta Reyes a Notice to Appear, which charged that she was removable under Section 212(a)(7)(A)(i) of the Immigration and Nationality Act ("INA") as an alien present in the United States without valid entry documents. After Acosta Reyes expressed a fear of returning to El Salvador, the Department of Homeland Security completed a credible-fear interview with her. The asylum officer found Acosta Reyes credible and referred her claim to Immigration Court.

On March 13, 2017, Acosta Reyes filed an application for asylum and withholding of removal based on political opinion and membership in a particular social group. She also applied for relief under the Convention Against Torture ("CAT"). In the ensuing proceedings before the IJ, Acosta Reyes admitted the factual allegations in the Notice to Appear. She also conceded the removability charge.

In addition to recounting the Maras' threats, Acosta Reyes testified that her mother is still living in Acosta Reyes's house in El Salvador. While her mother is scared to go outside, nobody has returned to the house to threaten her.

In support of her application, Acosta Reyes submitted, among other documents, news reports about the widespread gang extortion in El Salvador, an *amicus curiae* brief from the American Immigration Lawyers Association and Harvard Immigration and Refugee Clinical Program which argued that a person's anti-gang beliefs or refusal to cooperate could constitute a political opinion, and the 2016 Country Report for El Salvador, which noted the gangs' tight control over the country.

The IJ found Acosta Reyes's testimony to be credible. Nonetheless, the IJ denied Acosta Reyes's application, finding that she was ineligible for asylum, withholding of removal, and CAT relief. Specifically, the IJ found that Acosta Reyes was ineligible for asylum because one threat, uncoupled with any harm, did not rise to the level of persecution. Additionally, the IJ determined, even if Acosta Reyes could establish persecution, she failed to show that any such persecution was on account of the protected grounds alleged (*i.e.*, membership in a particular social group, or political opinion). While Acosta Reyes did not specify a particular social group to which she belonged, the IJ found that the only proposed group supported by the record was "people who are the victims of extortion by gang members." The

4

IJ, however, concluded that this group was not cognizable because it was defined solely by the harm Acosta Reyes suffered, lacked particularity, and was too broad and amorphous. The IJ continued, even if the group was cognizable, Acosta Reyes failed to demonstrate that she was persecuted on account of her membership in that group.

Next, the IJ rejected Acosta Reyes's claim that she was eligible for asylum because she was targeted by the Maras due to her anti-gang political opinion. The IJ first assumed, without finding, that this particular political opinion existed, was recognized in El Salvador, and that Acosta Reyes maintained the political opinion. But even with these assumptions, the IJ concluded that Acosta Reyes failed to show the requisite nexus between her alleged persecution and political opinion. The IJ reasoned that everybody else in the neighborhood was targeted, indicating that everybody was targeted for money, regardless of political opinions.

Moreover, with respect to both alleged protected grounds, the IJ found that Acosta Reyes had a subjective fear of future persecution, but that fear was not objectively reasonable because the evidence did not support a finding that she would be targeted based on her membership in the particular social group or based on her political opinion. The IJ further found, even if that burden had been met, Acosta Reyes did not demonstrate that she could not avoid future persecution by relocating to another part of El Salvador.

5

Finally, because Acosta Reyes could not satisfy the lower burden of proof for asylum, the IJ additionally concluded that she was ineligible for withholding of removal.  The IJ also determined that Acosta Reyes was ineligible for CAT relief because she did not demonstrate that the Maras acted as government officials or with the government's consent.

Acosta Reyes appealed the IJ's decision but the BIA rejected her appeal.  With respect to the asylum claim, the BIA concluded Acosta Reyes failed to establish past persecution or a well-founded fear of future persecution on account of her political opinion or membership in a particular social group.  It explained:

> We agree with the Immigration Judge that there is no indication in the record that gang members imputed a political opinion to [Acosta Reyes] or that they sought to harm her because of her membership in a particular class or segment of the Salvadoran populace.  Absent any indication of a nexus to a protected ground, [Acosta Reyes] has only presented a claim based upon indiscriminate criminal victimization for financial gain, which is insufficient to support a grant of asylum.

 (citations omitted).  Additionally, the BIA affirmed the IJ's denial of asylum because Acosta Reyes did not establish that she could not avoid persecution by relocating within El Salvador.

With respect to the withholding-of-removal claim, the BIA agreed that the IJ correctly denied the claim since Acosta Reyes could not establish the lesser burden of proof for asylum.  Finally, the BIA noted that Acosta Reyes failed to contest the

6

IJ's determination on the CAT claim and concluded that the opportunity to appeal the denial of that relief was deemed waived.

Acosta Reyes now appeals the BIA's determinations with respect to her asylum and withholding-of-removal claims.[2]  She makes the same contentions on appeal as she did to the BIA.

For the following reasons, we deny Acosta Reyes's petition.

## II.    Standards of Review

We review the BIA's decision as the final judgment.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Where the BIA expressly agreed with the IJ's reasoning, we review the decisions of both the BIA and the IJ to the extent of the agreement.  *Id.*  But when the BIA declines to reach an issue, we do not review it.  *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014).

We review *de novo*, as a question of law, whether an asserted group qualifies as a particular social group under the INA.  *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1195 (11th Cir. 2006).  However, our *de novo* review of the BIA's interpretation "is informed by the principle of deference articulated in *Chevron*."[3]  *Id.* (internal quotation marks omitted).

---

[2]  Acosta Reyes does not raise any arguments on appeal regarding her CAT application.
[3] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

7

We review the BIA's factual determinations under the highly deferential substantial-evidence test and "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001) (quotation omitted). We will reverse a finding of fact by the BIA "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

### III.    Asylum Claims

A.    <u>Law Applicable to Asylum Claims</u>

To be eligible for asylum, an "alien must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion; or (2) a well-founded fear of future persecution on account of [one of the five] statutorily-protected ground[s]." *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006) (per curiam). The causal connection between the feared persecution and the protected ground requires the asylum petitioner to present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of" the statutorily listed factor. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (internal quotations omitted). The applicant must demonstrate that one of

8

those protected grounds "was or will be at least one central reason for persecuting" them.  *See* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i).  Evidence that shows only that the petitioner was the victim of criminal activity does not establish persecution on account of a statutorily protected ground.  *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (per curiam).

Congress has not defined what constitutes a "particular social group" under the INA, but we approved the BIA's definition of the term as a group of persons who share a common characteristic that is immutable or fundamental to its members' individual identities or consciences.  *Castillo-Arias,* 446 F.3d at 1196–97.  Furthermore, the group must have sufficient "social visibility," and persecution based on membership in a particular social group should not be defined so broadly that it becomes "a catch-all for all groups who might claim persecution."  *See id.* at 1196–98.  A particular social group must not be too numerous and inchoate, and the group's defining attribute cannot be its persecution alone.  *Id.*; *see also Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (per curiam).  In *Castillo-Arias*, we found that noncriminal informants working against cartels were not a particular social group, in part because there was no evidence that the cartels would treat the informants any differently from any other person the cartels perceived to have interfered with their activities.  *Castillo-Arias*, 446 F.3d at 1198.  Furthermore, virtually the entire population of the country was subject to persecution

9

by the cartels, and risk of persecution alone does not create a particular social group within the meaning of the INA.  *Id.*

Next, "[p]ersecution on account of political opinion is persecution on account of the victim's political opinion, not the persecutor's."  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437–38 (11th Cir. 2004) (internal quotations and alterations omitted). The question, however, is whether the persecutor is acting because of the petitioner's political opinion, not whether the petitioner has a political opinion.  *Id*. at 438.  A theory of imputed political opinion may also be applied where the petitioner shows that an imputed political opinion, whether correctly or incorrectly attributed, was or would be the basis for persecution.  *Al Najjar*, 257 F.3d at 1289.

Finally, a petitioner who establishes past persecution is entitled to a rebuttable presumption that she has a well-founded fear of future persecution.  *Ruiz*, 440 F.3d at 1257.  However, if the petitioner cannot show past persecution, "the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable."  *Id.* (quoting *Al Najjar*, 257 F.3d at 1289).

B.    Acosta Reyes's Claim That She Was Persecuted Due to Her Membership in a Particular Social Group

Acosta Reyes contends that all three factors necessary for her asylum claim exist because (1) she established that she was persecuted as a result of a credible death threat by a member of the Maras; (2) she was a member of a particular social

10

group—people who are the victims of extortion or attempted extortion by the Maras; and (3) the persecution was on account of her membership in that group.

As an initial matter, we note that, the BIA's order reflecting its consideration of Acosta Reyes's asylum claim is somewhat vague. First, the BIA did not reach the issue of whether Acosta Reyes had experienced persecution, so we do not address it here. Second, it is unclear whether the BIA affirmed the IJ's decision on the ground that her proposed particular social group was not cognizable or because no nexus existed between Acosta Reyes's persecution and her membership in the particular social group. The BIA's lack of a determination with respect to the persecution prong is of no event since, if either of the other two prongs fail, so does Acosta Reyes's asylum claim.

With respect to the last two prongs, the government contends that the BIA's order addresses only the nexus issue. Under either interpretation, however, the BIA's decision was correct. We will analyze both grounds for dismissal, in turn.

### 1.  Membership in a Particular Social Group

The BIA's decision could be read as concluding that Acosta Reyes's proposed particular social group is not cognizable because it is defined by the persecution itself and is too numerous and inchoate. To the extent that that is what the BIA determined, we agree. The proposed group is defined by the Maras' extortion—which is the exact persecution that Acosta Reyes is attempting to escape. Since the

risk of persecution, alone, cannot create a particular social group, Acosta Reyes's proposed group is not cognizable. *See Rodriguez*, 735 F.3d at 1310. Additionally, Acosta Reyes's own exhibits show how widespread gang extortion is in El Salvador. One article Acosta Reyes submitted estimates that gang members extort 70% of businesses. Another article estimates that Salvadorans pay $756 million a year to gangs. Holding that "victims of extortion by the Maras" is a cognizable social group would turn the particular-social-group requirement into "a catch-all for all groups who might claim persecution." *Castillo-Arias*, 446 F.3d at 1197. Since we have previously held that Congress could not have intended this result, *see id.* at 1198, Acosta Reyes's social group is not cognizable.

### 2. Nexus Between Membership and Persecution

Even if Acosta Reyes's particular social group were cognizable, she did not establish a nexus between the group and the harm suffered. By Acosta Reyes's own testimony, the gang members targeted everybody in the neighborhood. There is no evidence that she was targeted because of her membership in a particular group. Instead, she was the victim of gang members who were indiscriminately motivated by financial gain. Since crimes of violence, alone, are not sufficient to establish persecution based on a statutorily protected ground, Acosta Reyes did not establish a nexus between her social group and the harm she suffered. *See Ruiz*, 440 F.3d at 1258. Consequently, the BIA's determination that Acosta Reyes was not targeted

due to her membership in a particular social group is supported by reasonable, substantial, and probative evidence on the record considered as a whole.

### 3. Fear of Future Persecution

Acosta Reyes also argues, even if she did not succeed in showing past persecution, she demonstrated a well-founded fear of future persecution. Again though, since Acosta Reyes did not set forth a cognizable particular social group, this claim too fails. Without a cognizable group, Acosta Reyes cannot establish a reasonable possibility that she would be persecuted in El Salvador based on being a member of that particular social group.

Even if Acosta Reyes could show that her particular social group was cognizable and that her fear of future persecution was objectively reasonable, where she has not shown past persecution, Acosta Reyes still had the burden of proving that she could not avoid persecution by safely relocating to another part of El Salvador. *See* 8 C.F.R. § 208.13(b)(2)(i); *Ruiz*, 440 F.3d at 1257. But Acosta Reyes did not brief the merits of the BIA's determination that she failed to meet this burden. As a result, the issue is abandoned on appeal. *See Sepulveda*, 401 F.3d at 1228 n.2 ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

C.    Acosta Reyes's Claim That She Was Persecuted Due to Political Opinion

Acosta Reyes contends in the alternative that all factors necessary for her asylum claim exist because (1) she established that she was persecuted as a result of

a credible death threat by a member of the Maras; and (2) the Maras gang persecuted her on account of her political opinion—her opposition to the Maras gang.

The BIA agreed with the IJ that there was no indication in the record that gang members imputed a political opinion to Acosta Reyes or that they sought to harm her based on this alleged opinion. Because the BIA expressly agreed with the IJ, we review both decisions to the extent they are in agreement on the issue. *See Kazemzadeh*, 577 F.3d at 1350.

Acosta Reyes testified that the Maras targeted everyone in her neighborhood and that they did not differentiate among their victims. Neither Acosta Reyes nor her family had been associated with any anti-gang organization or group. Nor did Acosta Reyes present any evidence that the Maras even knew of any anti-gang political opinions she may have had. *See Sanchez*, 392 F.3d at 438 (holding that a party must establish that they were persecuted "*because of* [their] actual or imputed political opinion."). Instead, the record indicates that the Maras indiscriminately targeted all ten of the houses in Acosta Reyes's neighborhood for financial benefit—not because of the occupants' political beliefs. As a result, we cannot find that the record compels reversal since the BIA's factual determinations are supported by reasonable, substantial, and probative evidence. *See Adefemi*, 386 F.3d at 1027.

14

Finally, and as noted previously, with respect to any claim of future persecution, Acosta Reyes did not brief the merits of the BIA's determination that she failed to meet this burden. Consequently, the issue is abandoned on appeal.

## IV.   Withholding-of-Removal Claim

An applicant for withholding of removal must establish that her "life or freedom would be threatened in [her] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A). But when an applicant fails to "establish a claim of asylum on the merits, [she] necessarily fails to establish eligibility for withholding of removal or protection under CAT." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).

We agree with the BIA determination that, having failed to meet the lower burden of proof for asylum, Acosta Reyes cannot show a probability of persecution to establish eligibility for withholding of removal.

## V.   Conclusion

For all of the foregoing reasons, we must deny Acosta Reyes's petition.

**PETITION DENIED.**

15