[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14232
Non-Argument Calendar

_____

Agency No. A208-866-644

EULALIA GARCIA-GARCIA,
FELIX JOEL FRANCISCO-GARCIA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 19, 2021)

Before JORDAN, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

Eulalia Garcia-Garcia ("Garcia") and her minor child, Felix Francisco-Garcia, seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her applications for asylum,

withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). In her petition, Garcia argues that: (1) the BIA erred by denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") because she suffered past persecution based on her Mayan race; (2) the BIA also erred by denying her application because she established an individualized, well-founded fear of future persecution, or a well-founded fear of future persecution based on a pattern or practice of persecution of indigenous people in Guatemala; and (3) the BIA failed to give reasoned consideration to her CAT claim and erred by denying her CAT relief.  After careful review, we deny the petition.

We review the BIA's decision as the final judgment, except to the extent it expressly adopts the IJ's opinion or reasoning.  Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019).  When the BIA adopts the IJ's reasoning, we review both decisions.  Id.  We review the IJ's opinion to the extent that the BIA has agreed with the IJ and found that the IJ's reasoning was supported by the record.  See Seck v. U.S. Att'y Gen., 663 F.3d 1356, 1364 (11th Cir. 2011).  We do not consider issues that were not reached by the BIA.  See id. at 1369.  Further, the BIA generally will not consider issues raised for the first time on appeal.  In re J---Y--- C---, 24 I. & N. Dec. 260, 261 n.1 (BIA 2007) (declining to consider the respondent's claim that she was eligible for asylum based on her mother's death from a forced

sterilization procedure because that claim was never raised before the IJ).   When a petitioner fails to offer an argument on an issue in her initial brief to us, that issue is abandoned.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

We review the agency's conclusions of law de novo and its factual findings under the highly deferential "substantial evidence test."  Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We also review for substantial evidence the BIA's determination that a petitioner is not entitled to CAT relief.  Alim v. Gonzales, 446 F.3d 1239, 1257 (11th Cir. 2006).  Under the substantial evidence test, we must affirm factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Lopez v. U.S. Att'y Gen., 914 F.3d 1292, 1297 (11th Cir. 2019) (quotation omitted).  We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of it.  Perez-Zenteno, 913 F.3d at 1306.  Even if the record could support multiple conclusions, we "must affirm the agency's decision unless there is no reasonable basis for that decision."  Id. (quotation omitted).

First, we find no merit to Garcia's argument that the agency erred by denying her application for asylum and withholding of removal.  An applicant for asylum may be granted asylum if the Department of Homeland Security, or the Attorney General, determines that she is a refugee.  8 U.S.C. § 1158(b)(1)(A).  The definition of "refugee" includes any person who is unable or unwilling to return to or avail

3

herself of the protection her country of nationality because of persecution or a well-founded fear of persecution on account of a protected ground, like race.  Id. § 1101(a)(42)(A).  The applicant carries the burden of proving statutory "refugee" status.  Id. § 1158(b)(1)(B)(i).  To establish eligibility, a noncitizen must establish past persecution, or a well-founded fear of future persecution based on a statutorily listed factor.  Diallo v. U.S. Att'y Gen., 596 F.3d 1329, 1332 (11th Cir. 2010).

Persecution is an "extreme concept" that requires more than mere harassment.  Sepulveda, 401 F.3d at 1231 (quotation omitted).  Employment discrimination that "stops short of depriving an individual of a means of earning a living does not constitute persecution."  Barreto-Clara v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001) (holding that a petitioner was not persecuted when she faced employment discrimination, lost her job, and was forced to take menial work).  In Zheng v. U.S. Attorney General, we held that a petitioner's termination from his job and his inability to find another job in the city did not amount to past persecution.  451 F.3d 1287, 1291 (11th Cir. 2006).  There, the petitioner did not testify how long he looked for another job and there was no evidence that he sought a job for the three years he lived at his parents' home.  Id.  We held that the evidence was insufficient to compel a finding that he was "deprived of all means of earning a living."  Id.

The applicant must prove that she suffered persecution on account of a protected ground.  Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1158 (11th Cir.

2019). This connection between the persecution and the statutorily protected ground is known as the "nexus" requirement. Id. To satisfy the nexus requirement, an asylum applicant must establish that the protected ground was "at least one central reason" for her persecution. Id. (quotation omitted).

To establish a well-founded fear of future persecution, an applicant must show a reasonable possibility that she will be singled out for persecution on account of a protected ground and that her fear is both "subjectively genuine and objectively reasonable." Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (quotation omitted). Credible testimony that the applicant "genuinely fears persecution" can satisfy the subjective component. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1232 (11th Cir. 2007) (citation omitted). The objective component can be fulfilled in most cases by either establishing past persecution or by establishing that she has a good reason to fear future persecution. Id.

A petitioner is not required to prove an individualized fear of future persecution when she has established her own inclusion in a group of similarly situated persons specifically targeted in a pattern or practice of persecution in her country of origin on account of a protected ground. 8 C.F.R. § 208.13(b)(2)(iii); Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009).

Under the withholding-of-removal statute, a noncitizen shall not be removed to a country if her life or freedom would be threatened in that country on account of

a protected ground, including membership in a particular social group.  8 U.S.C. §

1231(b)(3)(A).  The withholding of removal statute has a higher evidentiary standard

than what is required for asylum.  Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th

Cir. 2006).  Accordingly, if an applicant is unable to meet her burden of proof for

asylum, she is necessarily unable to meet the higher standard for withholding of

removal.  Kazemzadeh, 577 F.3d at 1352.

Here, substantial evidence supports the agency's finding that Garcia did not

suffer past persecution.  Garcia's claimed past persecution was that she was not

offered a job in a restaurant in Guatemala City, but the record supports the agency's

finding that Garcia was not offered a job because she did not speak Spanish, not

because of her race.  But even if Garcia was discriminated against because of her

race, we've held that employment discrimination like that does not equate to

persecution.  See Barreto-Clara, 275 F.3d at 1340.  Moreover, because Garcia was

able to maintain a job in the fields and own a home in Guatemala, we cannot say that

she was deprived of all means of making a living.  See id.; Zheng, 451 F.3d at 1291.

On this record, Garcia failed to establish that she suffered past persecution.

Substantial evidence also supports the agency's finding that Garcia failed to

establish a well-founded fear of future persecution.  For starters, Garcia did not

present sufficient evidence to establish that she had a reasonable fear of being singled

out for persecution because of her race.  Rather, she testified that she and her family

were never harmed in Guatemala, that she only left because she could not get a particular job, that things would be the same if she returned to Guatemala, and that she would return to Guatemala if she could speak Spanish. As for Garcia's testimony that she believed she would not receive a higher paying job if she returned to Guatemala, we've already explained that not receiving a higher paying job does not amount to persecution. See Barreto-Clara, 275 F.3d at 1340; Zheng, 451 F.3d at 1291. Thus, substantial evidence supports the agency's finding that Garcia did not establish an individualized well-founded fear of persecution.

As for Garcia's argument that she is in a particular social group -- indigenous people who have suffered a pattern or practice of discrimination amounting to persecution -- this issue was not reached by the BIA because Garcia failed to raise it in front of the IJ despite having multiple opportunities to do so. See Seck, 663 F.3d at 1369; J---Y---C---, 24 I. & N. at 261 n.1. Consequently, Garcia's pattern or practice claim is not properly before us. See Seck, 663 F.3d at 1369; Sepulveda, 401 F.3d at 1228 n.2. As for Garcia's withholding-of-removal claim, she necessarily failed to meet her burden because she failed to establish her eligibility for asylum, which carries a lesser burden than withholding of removal. See Tan, 446 F.3d at 1375; Kazemzadeh, 577 F.3d at 1352.

We also are unpersuaded by Garcia's argument that the agency erred in handling her CAT claim. An applicant for CAT relief must show that it is more

7

likely than not that she would be tortured if returned to the proposed country of removal. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). To constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. 8 C.F.R. § 1208.18(a)(5). Additionally, she must show that the torture would be by or with the consent or acquiescence of a public official or person acting in an official capacity. Id. § 1208.18(a)(1); Lingeswaran v. U.S. Att'y Gen., 969 F.3d 1278, 1293 (11th Cir. 2020). Acquiescence requires that a government be aware of the activity constituting torture and thereafter breach its responsibility to intervene. 8 C.F.R. § 1208.18(a)(7); Lingeswaran, 969 F.3d at 1293. A government does not acquiesce to torture in circumstances where it actively attempts, albeit not entirely successfully, to combat the alleged torture. Reyes-Sanchez, 369 F.3d at 1242-43. The burden of proof for an alien seeking withholding of removal under CAT, like the burden for an alien seeking withholding of removal under the INA, is higher than the burden for showing entitlement to asylum. Lingeswaran, 969 F.3d at 1293; see also 8 C.F.R. § 1208.16(c)(2).

In assessing a CAT claim, the IJ or BIA may consider episodes of past torture, widespread human rights abuses within the proposed country of removal, and other relevant country conditions evidence. 8 C.F.R. § 1208.16(c)(3). The BIA need not specifically address each claim and each piece of evidence presented, so long as it gives reasoned consideration to the application and makes adequate findings. Perez-

Guerrero v. U.S. Att'y Gen., 717 F.3d 1224, 1232 (11th Cir. 2013); see also Malu v. U.S. Att'y Gen., 764 F.3d 1282, 1293 (11th Cir. 2014) (holding that the IJ and BIA gave reasoned consideration to her CAT claim after exhaustively considering her application for withholding of removal on the same facts).

The record before us reflects that the BIA gave reasoned consideration to Garcia's CAT claim. After reviewing her application, the BIA agreed with the IJ's finding concerning CAT relief -- that Garcia had not shown that she would more likely than not be tortured in Guatemala with the acquiescence of the government -- after it had fully considered her asylum claim under a lower burden. See Lingeswaran, 969 F.3d at 1293; Malu, 764 F.3d at 1293. In reaching this conclusion, the BIA noted that Garcia had argued that the country conditions evidence showed high levels of poverty and discrimination against indigenous people in Guatemala. The BIA also considered Garcia's testimonial evidence that she was unable to obtain a higher paying job because she did not speak Spanish and her testimony that she had a job and a home in Guatemala. By considering Garcia's testimony and the country conditions evidence before denying her CAT claim, the BIA gave reasoned consideration to it. See Lingeswaran, 969 F.3d at 1293; Malu, 764 F.3d at 1293.

Moreover, the record does not compel a finding that Garcia would more likely than not be subjected to torture if she is removed to Guatemala or that the government would acquiesce to her torture. Based on our review of the record,

9

substantial evidence supports the BIA's conclusion that Garcia would not be individually targeted if she were returned to Guatemala. See Lingeswaran, 969 F.3d at 1293. Garcia testified that she and her family had not been harmed in Guatemala, that things would be the same if she returned to Guatemala, and that she would return to Guatemala if she could speak Spanish. And while the record suggests that indigenous women are subjected to discrimination, lower levels of education, and higher levels of poverty, CAT requires something more than this kind of discrimination to constitute torture. 8 C.F.R. § 208.18(a)(5).

In addition, the articles and reports Garcia filed reveal that the Guatemalan government was trying to help the indigenous population and that it had created positions and implemented laws to prevent employment discrimination against indigenous populations and to promote the lifestyles, traditions, and social organizations of indigenous people. Thus, substantial evidence supports the agency's finding that the Guatemalan government would not acquiesce to the torture of Garcia as an indigenous Mayan, because attempts were being made to protect the indigenous people, even if they were unsuccessful or slow moving. See Reyes-Sanchez, 369 F.3d at 1242– 43.

Finally, to the extent Garcia argues that, generally, indigenous Mayans are more likely than not to be subjected to a pattern or practice of torture, CAT relief requires the applicant to prove that she would more likely than not be tortured if

10

returned to Guatemala.   See id. at 1242.   And as we've explained, substantial evidence supports the finding that the government would not, more likely than not, acquiesce to the torture of indigenous people.   Accordingly, substantial evidence supports the BIA's denial of Garcia's CAT claim, and we deny her petition for review.

**PETITION DENIED.**