[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13857
Non-Argument Calendar

_____

Agency No. A205-766-906


JOSE LEONARDO MARTINEZ CASTRO,
KAREN SOBEIDA LOPEZ DE MARTINEZ,
MARIA JOSE MARTINEZ LOPEZ,
SEVERIN DANIEL MARTINEZ LOPEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 29, 2020)

Before BRANCH, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

Jose Martinez Castro[1] ("Martinez Castro") petitions for review of the order by the Board of Immigration Appeals ("BIA") dismissing his appeal from the decision of the Immigration Judge ("IJ").  The IJ's decision denied Martinez Castro's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, 8 C.F.R. § 208.16 ("CAT").[2]  The government has moved for summary disposition of the petition and to stay the briefing schedule.  Because Martinez Castro has abandoned his argument on a determinative issue—whether the government of his home county is unable or unwilling to protect him—we agree that summary denial is appropriate.  Accordingly, we grant the government's motion for summary disposition, deny the petition, and deny as moot the motion to stay the briefing schedule.

## I.    FACTUAL AND PROCEEDURAL BACKGROUND

Martinez Castro, a citizen and native of Honduras, entered the United States at Miami International Airport on or about January 15, 2013.  In May 2013, the Department of Homeland Security served Martinez Castro with a notice to appear,

---

[1]  Jose Martinez Castro is the lead petitioner, and his wife, Karen Sobeida Lopez de Martinez, and their children, Maria and Severin Martinez Lopez, are co-petitioners.  Because the co-petitioners are derivatives on Martinez Castro's asylum application, we refer to the claims as Martinez Castro's claims.

[2]  The IJ denied Martinez Castro's application for relief under CAT.  Martinez Castro raises no challenge the denial of this form of relief on appeal.  We, therefore, need not address that claim.  *See Sepuleda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

2

charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant who was not in possession of a valid entry document at the time of application for admission. In September 2013, Martinez Castro appeared before an IJ and, through counsel, conceded removability.

Martinez Castro then filed a form I-589 application for asylum, withholding of removal, and CAT relief. Martinez Castro checked boxes on the application indicating that he was seeking asylum or withholding of removal based on political opinion and membership in a particular social group. On the application, he stated that he was a member of the Association of Judges and Magistrates of Honduras, a "legal organization, whose principles are to promote justice, honesty, the defense of the rights of its members, and the respect and independence of judges and magistrates."

Martinez Castro attached an affidavit to his application, in which he stated that he was a criminal pre-trial judge in the Honduran judicial system. He stated that he was persecuted based on his membership in a particular social group of "Honduran justices, judges, magistrates, prosecutors and private attorneys that are opposed to the general criminal element existing in the country and corrupt practices perpetrated by government officials." He also stated that he and his family were threatened by an international criminal organization that had corrupted certain members of the Honduran judicial system. He had been assigned a case involving

the criminal organization and had made several findings against it.  His persecution arose from those findings, as well as from his social group's opposition to corrupt practices within the Honduran government.  He believed that he and his family would continue to be persecuted for the same reasons if they returned to Honduras. Martinez Castro further attested that the Honduran government could not protect the country's honest judges, prosecutors, and attorneys from the criminal element and that from January 2010 to July 2013, a total of sixty-four judges, magistrates, prosecutors, and private attorneys had been killed.  He also stated that the Honduran government was considering a course of action for protection from the general criminal element and that the United Nations made efforts to intervene on behalf of the group.

Martinez Castro claimed that in December 2012, defense attorneys in two cases to which he was assigned moved for consolidation of the cases and that two judges from his courthouse attempted to pressure him into granting the motion. Shortly thereafter, on January 11, 2013, he and his family had just returned home from a church gathering when two men with guns approached them and handed him a note.  The note stated that "blood would run" if he did not cooperate with the criminal organization, including consolidating the two cases, dismissing one of the cases, and ordering the release of three defendants while they awaited trial.  The note instructed him not to tell anyone what happened, for his safety and that of his family,

4

and that the organization had people watching him at all times. The men fired several shots at Martinez Castro's truck, where his children were asleep in the backseat. Neither of his children were injured. Martinez Castro believes that the two judges who approached him about the cases had been corrupted by the criminal organization.

Martinez Castro then purchased plane tickets and fled with his wife, Karen Sobeida Lopez de Martinez ("Lopez de Martinez"), and their children to the United States. While at the airport in Honduras, Martinez Castro called the commissioner in charge of protecting human rights in the northern zone of Honduras and explained the situation. The commissioner stated that he would file a formal complaint with the prosecutor's office. Martinez Castro later learned that in response to the complaint, the Honduran police had gone to their house and inspected their truck.

In January 2015, at a hearing before the IJ, Martinez Castro testified to the same facts described in his affidavit. Lopez de Martinez testified before the IJ in October 2017.

In February 2018, the IJ denied Martinez Castro's application for asylum, withholding of removal, and CAT relief. The IJ found that Martinez Castro and Lopez de Martinez were credible, but that the actions of the criminal organization did not rise to the level of persecution. Although Martinez Castro established a subjective fear of future persecution, he did not establish that his fear was objectively

reasonable. The IJ further noted that Martinez Castro had presented no argument regarding persecution on account of political opinion. The IJ stated that he would consider only whether Martinez Castro had established relief on account of his membership in a particular social group.

The IJ concluded that Martinez Castro's proposed social group of "justices, judges, magistrates, prosecutors, and private attorneys who are opposed to the general criminal element existing in the country and to the corrupt practices perpetrated by Honduran government authorities" was not cognizable because it lacked immutability, particularity, and social distinction, and that Martinez Castro had not established a nexus between his membership in the group and his past harm. The IJ also found that Martinez Castro had not established that the Honduran government would be unable or unwilling to protect him because: (1) the case that he was assigned shows that the Honduran government was attempting to prosecute the members of the criminal organization; and (2) the Supreme Court of Justice of Honduras was making an effort to protect its judicial officers. Accordingly, the IJ denied Martinez Castro's application for asylum. The IJ denied Martinez Castro's application for withholding of removal because he could not establish eligibility for asylum and also concluded that Martinez Castro was not eligible for CAT relief.

Martinez Castro filed a notice of appeal to the BIA, arguing that the IJ erred by holding that: (1) the actions of the criminal organization did not rise to the level

6

of persecution; (2) his fear of future persecution was not objectively reasonable; and (3) he was not a member of a particular social group and did not establish a nexus between his harms and the particular social group. In his appellate brief before the BIA, Martinez Castro argued that the IJ erred by finding that the acts of the criminal organization did not rise to the level of persecution. He also argued that the IJ erred by concluding that his proposed social group lacked immutability. Martinez Castro, however, did not challenge the IJ's decision relating to political opinion or to relief under CAT.

The BIA dismissed Martinez Castro's appeal on two grounds. First, the BIA agreed with the IJ's conclusion that his proposed particular social group was not cognizable because it lacked immutability, particularity, and social distinction. Second, the BIA upheld the IJ's finding that Martinez Castro had not established that the Honduran government was unable or unwilling to protect him because the police were willing to investigate his case and the Honduran government had taken steps to protect judges and magistrates in cities with high crime rates. Accordingly, the BIA concluded that Martinez Castro had not established his eligibility for asylum or withholding of removal. The BIA declined to address his remaining arguments on appeal.

This petition for review ensued, and the government moved for summary disposition and to stay the briefing schedule. Martinez Castro filed no opposition to the government's motion.

## II.    STANDARD OF REVIEW

"We review the BIA's decision as the final judgment, unless the BIA has expressly adopted the IJ's decision, in which case we review the IJ's decision as well." *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1330 (11th Cir. 2011). We also "review both the IJ's and BIA's decision to the extent that the BIA agreed with the IJ's findings or relied on his reasoning, even if the BIA did not use 'magic words' and state that it was 'adopting' the IJ's findings or reasoning." *Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1153 (11th Cir. 2014). "[W]e review conclusions of law *de novo* and factual determinations under the substantial evidence test." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). "Whether an asserted group qualifies as a 'particular social group' under the INA is a question of law." *Id.* (quoting *Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290 (11th Cir. 2014). We review a finding as to whether an applicant suffered past persecution under the substantial evidence test and will affirm where the finding is supported by reasonable, substantial, and probative evidence on the record considered as a whole. *See Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230–34 (11th Cir. 2007); *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006).

## III.    ANALYSIS

The Attorney General has discretion to grant asylum to an applicant who is determined to be a refugee as defined under the Immigration and Nationality Act ("INA").  8 U.S.C. § 1158(b)(1)(A).  The INA defines a "refugee," in relevant part, as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

*Id.* § 1101(a)(42)(A).  The asylum applicant bears the burden to establish, with specific and credible evidence, past persecution, or a well-founded fear of future persecution, on account of race, religion, nationality, membership in a particular social group, or political opinion.  *Id.* § 1158(b)(1)(B); *accord Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

To establish asylum eligibility, the applicant "must show not only past persecution or a well-founded fear of future persecution, but also that she is unable to avail herself of the protection of her home country."  *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007).    "In all cases, the persecution must be '"by government forces" or "by non-government groups that the government cannot

9

control."'"  *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1331 (11th Cir. 2019) (quoting

*Sama v. U.S. Att'y Gen.*, 887 F.3d 1225, 1231–32 (11th Cir. 2018)).  Thus, "[a]n

applicant for asylum who alleges persecution by a private actor must prove that his

home country is unable or unwilling to protect him."  *Ayala v. U.S. Att'y Gen.*, 605

F.3d 941, 950 (11th Cir. 2010).

Summary disposition is proper where "the position of one of the parties is

clearly right as a matter of law so that there can be no substantial question as to the

outcome of the case, or where, as is more frequently the case, the appeal is

frivolous."  *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).

"When an appellant fails to offer argument on an issue, that issue is

abandoned."  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

A party adequately raises an issue by "specifically and clearly identif[ying]" the

issue in its initial brief.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330

(11th Cir. 2004)).  The party must "plainly and prominently" raise the issue.  *Id.*

(quoting *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003)).  A

passing reference to an issue does not raise a claim for review.  *See Sepulveda*, 401

F.3d at 1228 n.2; *see also Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th

Cir. 2009).  Likewise, "[a]bandonment of an issue can also occur when passing

references appear in the argument section of an opening brief, particularly when the

references are mere 'background' to the appellant's main arguments or when they

are 'buried' within those arguments." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014). "Moreover, a party may not incorporate by reference arguments presented below, but must specifically and clearly identify the issues presented for appellate review." *Patel v. U.S. Att'y Gen.*, 787 F. App'x 663, 667 n.2 (11th Cir. 2019) (unpublished).

Here, the BIA dismissed Martinez Castro's appeal of the IJ's decision on two grounds: (1) Martinez Castro's proposed social group was not cognizable; and (2) Martinez Castro did not sufficiently establish that the Honduran government was or is unable or unwilling to protect him. A review of Martinez Castro's petition before this Court shows that Martinez Castro challenges only the first of these grounds. Martinez Castro does not identify the "unable or unwilling" finding as an issue for review, nor does he devote a discrete section of argument to it. Indeed, Martinez Castro does not articulate any argument that the IJ and the BIA erred in finding that he did not establish that the Honduran government is either unable or unwilling to protect him. As already noted, "[a]n applicant for asylum who alleges persecution by a private actor must prove that his home country is unable or unwilling to protect him." *Ayala*, 605 F.3d at 950; *see also Ali*, 931 F.3d at 1331. Here, Martinez Castro does not "plainly and prominently" offer argument on a determinative issue, and we therefore conclude that he has waived any challenge to the finding that he did not establish that the Honduran government is unable or unwilling to protect him.

11

Because Martinez Castro alleged persecution by a private actor, his abandonment of any challenge to the "unable or unwilling" finding is dispositive of his claim of persecution on account of a statutorily protected ground.  Accordingly, because the government's argument is correct as a matter of law and there is no substantial question about the outcome of the case, the government's motion for summary disposition is **GRANTED** and its motion to stay the briefing schedule is **DENIED AS MOOT**.

**PETITION DENIED.**