[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13557

Non-Argument Calendar

_____

SANTOS ELIAS PAZ-CASTILLO,

                                                            Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-768-438

_____

Before ROSENBAUM, JILL PRYOR, and TJOFLAT, Circuit Judges.

PER CURIAM:

Petitioner Santos Elias Paz-Castillo—a Honduran citizen—seeks review of the Board of Immigration Appeals' (BIA) final order. The BIA affirmed the Immigration Judge's (IJ) denial of his application for asylum, withholding of removal, and Convention Against Torture (CAT) relief. He argues that the BIA erred because his proposed particular social group was cognizable and that the record compels reversal because he is likely to be tortured with the acquiescence of the Honduran government if he returns. For the reasons stated below, Paz-Castillo's petition is dismissed in part for lack of jurisdiction and denied in part.

## I. Background

Around January 2006, Paz-Castillo unlawfully entered the United States. In September 2017, the Department of Homeland Security (DHS) served Paz-Castillo with a Notice to Appear. DHS charged Paz-Castillo as removable under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) and ordered him to appear before an IJ.[1] Paz-Castillo later admitted the allegations in the notice and conceded to the charge of removability.

---

[1] Under 8 U.S.C. § 1182(a)(6)(A)(i), a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

A month later, Paz-Castillo applied for asylum, withholding of removal, and CAT relief. He asserted persecution on account of membership in a particular social group. He defined his particular social group as "Honduran men with construction skills." In his application, he stated that he did not want to go back to Honduras "because of the crime." He alleged that the police do nothing to address the crime, do not respond when called, and do not investigate when someone is killed. He also stated the gangs have repeatedly tried to recruit him and described one incident when he was chased by alleged gang members after he refused to get in their truck.

Paz-Castillo also filed a personal statement. In it, he stated that he witnessed several assaults on the buses he took home from work in Honduras. He reiterated that two competing gangs controlled the area where he lived, and both tried to recruit and threatened him. And he stated that he could not trust the Honduran police because he could not know which police officers were involved with the gangs.

In support of his application, Paz-Castillo submitted the U.S. Department of State's Honduras 2018 Human Rights Report. The report stated that violence and organized crime are pervasive in Honduras, but that the government had made efforts to reduce these problems, such as removing police officers for corruption or involvement in criminal activity.

At his hearing before the IJ, Paz-Castillo—through his attorney—admitted that he arrived in the United States in 2006 and

that he filed for asylum in 2017. He also conceded that he had no evidence or testimony to support a waiver of the one-year deadline for asylum applications.

The IJ denied Paz-Castillo's application for asylum, withholding of removal, and CAT relief. As to his asylum application, the IJ found that Paz-Castillo was ineligible because he applied eleven years after his arrival and no circumstances justified his late filing. Even if Paz-Castillo's asylum application were timely, the IJ explained that he would deny it because Paz-Castillo did not demonstrate that he suffered past persecution or was a member of a cognizable particular social group. Because Paz-Castillo failed to meet the lower standard for asylum, the IJ found that he inherently failed to qualify for withholding of removal. Finally, the IJ found that there was no testimony that Paz-Castillo would be tortured by, or with the acquiescence of, a Honduran government official and thus denied CAT relief.

Paz-Castillo appealed the IJ's decision to the BIA. The BIA adopted and affirmed the decision of the IJ because it found that Paz-Castillo had neither identified any clear error of fact in the IJ's decision nor made any argument that would cause the BIA to disturb the IJ's decision. Paz-Castillo timely petitioned for review.

## II. Legal Standards

A few standards of review govern this case. "We review our own subject matter jurisdiction de novo." *Ponce Flores v. U.S. Att'y Gen.*, 64 F.4th 1208, 1217 (11th Cir. 2023). "We review the BIA's decision as the final judgment, unless the BIA expressly

adopted the IJ's decision." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam). "Whe[n] the BIA agrees with the IJ's reasoning, we review the decisions of both the BIA and IJ to the extent of the agreement." *Id.* We review de novo a social group's validity and afford *Chevron* deference to an agency's consideration of ambiguous provisions in the statute it administers.[2] *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).

Finally, we review "the BIA's factual findings to determine whether they are supported by substantial evidence." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (per curiam). "Under the substantial evidence standard, we 'view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.'" *Id.* (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)). "We may reverse the BIA's factual findings only when the record compels a reversal." *Id.*; 8 U.S.C. § 1252(b)(4)(B).

## III. Discussion

Paz-Castillo makes three arguments. First, as to his asylum application, he argues that the BIA erred in upholding the IJ's determination that his particular social group is not cognizable and that the nexus requirement was not met. Second, he contends that the BIA erred in upholding the IJ's determination that he failed to meet the requirements for withholding of removal be-

---

[2] *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

cause he is likely to be targeted by gang violence if he returns to Honduras. Last, he asserts that the BIA erred in affirming the IJ's denial of CAT protection because he witnessed gang members assault others, was targeted by those gangs, and could not rely on Honduran police to protect him.

We first explain why we lack jurisdiction to review Paz-Castillo's asylum claim. Next, we address why the BIA did not err in upholding the IJ's decision as to Paz-Castillo's withholding of removal and CAT protection applications.

## A. Asylum

All asylum applicants must file their application within one year of their arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). The Attorney General may consider an untimely asylum application if the applicant demonstrates "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year] period."[3] *Id.* § 1158(a)(2)(D). "No court shall have jurisdiction to review any determination of the Attorney General" that an asylum application was not filed within the one-year deadline. *Id.* § 1158(a)(3); *see also Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). And we lack jurisdiction to review an otherwise reviewable issue if it would not affect the outcome because of an

---

[3] *See* 8 C.F.R. § 208.4(a)(4)–(5) (identifying events that qualify as changed circumstances and extraordinary circumstances).

alternative argument subject to a jurisdictional bar.  *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290–91 (11th Cir. 2014), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).

We lack jurisdiction to review the denial of Paz-Castillo's asylum claim.  The IJ determined that Paz-Castillo did not file his application within one-year of his arrival to the United States and that no extraordinary circumstances justified the late filing.  The BIA affirmed and adopted the IJ's determination.  The BIA's decision whether Paz-Castillo "complied with the one-year time limit or established extraordinary circumstances . . . is not reviewable by any court."  *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam).[4]  Accordingly, we dismiss Paz-Castillo's petition as it relates to his asylum claim.

## B.  Withholding of Removal

Under the INA, a noncitizen shall not be removed to a country if his "life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  The applicant bears the burden of establishing that persecution based on one of these protected grounds is "more likely than not" if he or she were to return to the country of removal.  *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam) (noting that this standard is "'more strin-

---

[4] We do not consider the IJ's alternative basis for denying Paz-Castillo's asylum application because it would not change the outcome.  *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1290–91 (11th Cir. 2014).

gent' than the standard for asylum relief" (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam))).

Relevant here is the protected ground: "membership in a particular social group." A particular social group must (1) have members "who[] share a common, immutable characteristic"; (2) be "defined with particularity"; and (3) be "socially distinct within the society in question." *See Gonzalez*, 820 F.3d at 404 (citations omitted). "An immutable characteristic under BIA decisions is one 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Id.* at 405 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987)). "Regarding the particular[it]y requirement, the BIA has stated that '[t]he [proposed] group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective.'" *Id.* at 404 (alterations in original) (quoting *Matter of W-G-R-*, 26 I. & N. Dec. 208, 214 (BIA 2014), *vacated in part on other grounds, Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016)). "Social distinction requires the particular social group to be perceived as a distinct group by society." *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342 (11th Cir. 2019) (per curiam).

The IJ and BIA correctly concluded that Paz-Castillo's proposed particular social group was not cognizable under the INA because it lacked particularity and social distinction. Even assuming Paz-Castillo's proposed social group—Honduran men with

construction skills—is sufficiently immutable, it lacks particularity and social distinction. As to particularity, Paz-Castillo's proposed group is broad and amorphous; its boundaries are subjective as it is unclear how skilled in construction a person must be to qualify. *See Perez-Zenteno*, 913 F.3d at 1304, 1309 (concluding that the proposed particular social group was not particular because it "lacked any definable boundaries and actually encompassed a very large percentage of the Mexican population"). Likewise, Paz-Castillo has not shown that Honduran men with construction skills are perceived by Honduran society to be a distinct group. *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1194 (11th Cir. 2006); *see also Matter of W-G-R-*, 26 I. & N. at 217 ("To have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group.").

Paz-Castillo was ineligible for withholding of removal. And the BIA did not err when it adopted the IJ's denial of Paz-Castillo's withholding of removal application. We therefore deny his petition as it pertains to withholding of removal.

### C.  CAT

To be eligible for CAT relief, an applicant must show that it is more likely than not he will be tortured "by or . . . with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "Acquiescence 'requires that the public official,

prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.'" *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004) (quoting 8 C.F.R. § 208.18(a)(7)). "Such awareness requires a finding of either actual knowledge or willful blindness." 8 C.F.R. § 208.18(a)(7). But when the government "actively, albeit not entirely successfully, combats" a violent group, the government has not acquiesced to harm inflicted by that group. *Reyes-Sanchez*, 369 F.3d at 1243.

Substantial evidence supports the BIA's conclusion that it is not more likely than not that Paz-Castillo would be tortured by, or with the consent or acquiescence of, the Honduran government if he returned. True, Paz-Castillo stated that Honduran police do nothing to control gangs and that he could not trust the police because it is unclear which police officers are involved with the gangs. But Paz-Castillo made no specific allegations of police misconduct or inaction. The 2018 Honduras Human Rights Report that Paz-Castillo included with his application also notes that violence and organized crime are pervasive in Honduras. However, the report later states that the government has made efforts to reduce these problems, including removing or suspending corrupt police officers. Because the Honduran government actively works to prevent the harm done by gangs—though often unsuccessfully—its actions do not rise to acquiescence to torture. *See id.*

Accordingly, substantial evidence supports the IJ's and BIA's denial of Paz-Castillo's CAT application. We therefore deny his petition as it pertains to his CAT claim.

## IV. Conclusion

We dismiss Paz-Castillo's petition as it pertains to his asylum application for lack of jurisdiction. And we deny his petition as it relates to his withholding of removal and CAT applications.

**DISMISSED, IN PART, AND DENIED, IN PART.**