[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12141

Non-Argument Calendar

_____

JAMOLIDDIN BOTUROVICH MUKHTOROV,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A213-482-559

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Jamoliddin Mukhtorov petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). After careful review, we deny his petition.

## I.

Mukhtorov, a native and citizen of Uzbekistan, entered the United States without a valid entry document. The Department of Homeland Security served him with a notice to appear, charging him as removable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for lacking such a document. Mukhtorov retained counsel and applied for asylum, withholding of removal, and CAT relief. In his application he asserted that he faced persecution and feared future persecution if he returned to Uzbekistan based on his religion, Islam. In support of his application, he provided United States Department of State reports, news articles, and personal statements from himself, his mother, and his sister. He also testified at a hearing before the IJ. We recount the evidence in support of his application below.

Mukhtorov included with his application the Department of State's Uzbekistan 2019 Human Rights Report, which indicated that Uzbekistan imposed "restrictions on religious freedom." AR at

241.[1] He also provided the Department of State's 2019 International Religious Freedom Report, which noted that although 88 percent of Uzbekistan's population was Muslim and its constitution provided for religious freedom and separation of government and religion, "some nongovernmental organization . . . representatives said the government continued torture of persons arrested and jailed on suspicion of religious extremism or of participating in underground Islamic activity." *Id.* at 173.

The report explained that Uzbekistan closely regulated religious practices and criminalized unregistered religious activity. The requirements for registration were burdensome. Many religious groups that were unable to meet the requirements were "subject to harassment by local authorities and criminal sanction for engaging in 'illegal' religious activities." *Id.* at 184. Some Muslims, the report noted, had recounted that Uzbekistan's strict regulation of religious practices and denial of registration for many groups resulted in the criminalization of "meetings of persons gathered to discuss their faith or to exchange religious ideas." *Id.* at 183.

The report stated that Uzbekistan law prohibited "all individuals, except clergy and individuals serving in leadership positions of officially recognized religious practices, from wearing religious attire in public places." *Id.* at 179. The law, however, was "not generally enforce[d]," except in public and private schools. *Id.* The government also banned some individuals from growing

---

[1] "AR" refers to the administrative record.

beards and allegedly had forced Muslim men to shave their beards. And, according to the report, police had "detained two bloggers who called for the government to allow girls to wear hijabs, men to grow beards, and children to attend mosques, although reportedly other bloggers who criticized the government faced no backlash." *Id.* at 173.

Mukhtorov also submitted to the IJ news articles that detailed how Uzbekistan limited the wearing of religious attire in public. He attached to his application an article about Uzbekistan's complicated relationship with headscarves. Since 2018, the government has banned girls from wearing headscarves at school. But "if a girl wears a headscarf, she is thought to have more chances to get married successfully." *Id.* at 197. He also attached an article about an "anti-beard campaign" in Uzbekistan in which authorities were forcing men to shave their beards. *Id.* at 202–03. Finally, he attached an article detailing the arrest of four bloggers who had written critically about the banning of hijabs at schools, the authorities' mistreatment of Muslims, and the forced shaving of men's beards.

The record before the IJ also included statements from Mukhtorov that he, his mother, and his sister had faced oppression for their religious practices. He stated that in October 2018, his sister was reported to the local authorities for refusing to remove her hijab at school. That same day, a local chairman and police officers came to the family's home "and spoke rudely to [Mukhtorov's] mother and sister." *Id.* at 212. Mukhtorov told the officers "not to speak disrespectfully," and the officers "inflicted bodily injuries" on

him, injuring his head, body, and legs. *Id.* The police also forced him, his mother, and his sister "to write that we are not going to be that religious," that the women would not wear hijabs, and that they would "not follow Islamic traditions." *Id.* at 118.

Later in the day, Mukhtorov was in pain in his head and lower back. He fainted, so his mother and a neighbor drove him to the hospital. In the intensive care unit, he "lay unconscious in a coma for a day," and, when he regained consciousness, was blind and terrified. *Id.* at 213. Mukhtorov stated that the "severe head injury" caused his "memory [to] deteriorate[] a lot." *Id.* at 214. He also stated that he "was bedridden for a long time because the doctors did surgery on [his] lumbar spine," an injury that "still causes . . . severe back pain." *Id.* at 213. But Mukhtorov did not state that the surgery and subsequent back pain were tied to the assault. Mukhtorov explained that he did not complain about the assault to the authorities because doing so could result in "more severe pressure and torture." *Id.*

Mukhtorov further stated he, his mother, and his sister were harassed "every week, every month, every day for years." *Id.* He once was stopped at a market by a government official who checked his telephone: when the official saw a photo of Mukhtorov's mother wearing a hijab, the official "started inquiring . . . about it." *Id.* at 124. When he was in school and in college, Mukhtorov recalled, "almost every week these people used to come . . . and ask [him] not to go . . . to the mosque, not to be religious." *Id.* He recalled that about a year after the assault, the family sought

passports. During that process, police officers demanded that his mother and sister remove their hijabs, and threatened the family "by showing [them] videos and photographs . . . that depicted scenes of repression and torture in prisons, . . . continuously threaten[ing the family] that the [officers] could put [the family] in the same situation" if they continued to "be that religious." *Id.* at 123, 217.

Mukhtorov testified that he feared that if he returned to Uzbekistan, "they will catch me in the airport and they will send me to prison" for practicing Islam. *Id.* at 128. He stated that he did not know if he could safely relocate within Uzbekistan, stating, "maybe I could." *Id.* at 129. He acknowledged that his mother had left Uzbekistan and returned without major incident.

Mukhtorov's mother, Sharifa Tursunova, and sister, Umarobonu Mukhtorova, described the restraints they experienced in practicing Islam as well as the assault Mukhtorov experienced. Tursunova stated that practicing Islam was "impossible" in Uzbekistan. *Id.* at 145. Local police accused her of "secretly teaching the hijab-wearing and Islamic teachings" to assistants in her dressmaking shop and surveilled the apartment where she lived. *Id.* at 146. She stated that she "was humiliated" when she left the house in a hijab, was told to remove it when she went to her children's school, and once was detained for three days "under duress and interrogation" for wearing a hijab. *Id.* Mukhtorova was kicked out of school for wearing a hijab.

23-12141                Opinion of the Court                7

Tursunova and Mukhtorova described the assault on Mukhtorov. Tursunova stated that police visited her house after her daughter was kicked out of school. The police raised their voices and made disrespectful remarks about hijab-wearing to her and her daughter, so Mukhtorov asked the police not to speak rudely. The police accused Mukhtorov of being "against the law and politics" and then "grabbed his hair, bent his neck, and struck him hard in his head with a black stick." *Id.* at 148. "The conflict lasted for a long time," with all three of the family members being "abused." *Id.* A police officer told Mukhtorov, "I will use every possible law to detain you for violating the laws and politics of Uzbekistan." *Id.* After the attack, Mukhtorov began feeling unwell, vomited, and "began fainting from severe pain in his head." *Id.* A neighbor helped Mukhtorov get to the hospital, where he was in "critical condition" in the "intensive care unit in a coma." *Id.* He was in a coma for a day, and when he awoke, he said he could not see. Tursunova stated that she checked him out of the hospital because of the poor conditions of the facility. Mukhtorov lost his vision for about five days and had blurred vision thereafter. Tursunova had to treat him "for many months." *Id.* Mukhtorov's health remained poor "for a long time." *Id.* Tursunova mentioned that Mukhtorov "was bedridden for many months due to his spinal cord surgery," although she did not link the surgery to the assault and Mukhtorova did not mention it.[2] *Id.*

---

[2] Tursunova and Mukhtorova also were in immigration proceedings, but they are not parties to this petition for review.

After the hearing, the IJ denied Mukhtorov's application. The IJ found Mukhtorov to be "generally credible regarding his religion and his family in Uzbekistan," but explained that "his testimony was vague and unpersuasive, specifically when it came to his testimony regarding his fear of return to Uzbekistan and his freedom to practice his religion" as compared to the Department of State reports he submitted. *Id.* at 43–44. The IJ stated that the mistreatment Mukhtorov experienced did not individually or cumulatively rise to the level of past persecution. Mukhtorov "received physical harm one time," and provided only "vague testimony as to the results or the outcome of the treatment he received." *Id.* at 46. The IJ further found that Mukhtorov's fear of returning to Uzbekistan was not objectively reasonable and therefore not well-founded. The IJ explained that Mukhtorov's testimony was inconsistent with the fact that Uzbekistan is overwhelmingly Muslim, and that "[t]here is no evidence . . . that shows Muslims are mistreated, targeted or persecuted simply because they are Muslims." *Id.* at 47. Additionally, Mukhtorov's testimony that he feared returning to Uzbekistan was undercut by the fact that his mother had left the country and then returned without being arrested. For these reasons, the IJ rejected Mukhtorov's claim for asylum.

The IJ concluded that because Mukhtorov could not demonstrate eligibility for asylum, he could not satisfy the stricter withholding-of-removal standard. And the IJ found that Mukhtorov had presented no credible evidence suggesting that he would more likely than not be subjected to torture upon return to Uzbekistan. Thus, the IJ denied CAT relief.

Mukhtorov timely appealed to the BIA. The BIA dismissed his appeal. It "assume[d] that [Mukhtorov] was credible" but nonetheless "agree[d]" with the IJ that he had not demonstrated eligibility for asylum or withholding of removal. *Id.* at 3. Specifically, the BIA "discern[ed] no legal error or clear factual error" in the IJ's conclusion that Mukhtorov had failed to show past persecution, a well-founded fear of future persecution, or that it was more likely than not that he would be persecuted. *Id.* Mukhtorov's testimony regarding the assault he experienced, as well as the results or outcome of his treatment, "was vague." *Id.* at 4. As to fear of future persecution, the BIA agreed with the IJ that Mukhtorov's country conditions evidence "d[id] not reflect the targeting, mistreatment, or persecution of persons simply because they are Muslim." *Id.*

The BIA also concluded that Mukhtorov was not entitled to CAT relief "because he has not demonstrated that he is more likely than not to be tortured in Uzbekistan, by or with the acquiescence (including willful blindness) of a government official upon return." *Id.* Mukhtorov had complained that the IJ had failed to give his CAT claim "separate and thorough consideration" and had failed to state any grounds for denying his claim, *id.* at 26, but the BIA disagreed. The BIA explained that the IJ had "considered [Mukhtorov's] testimony and written evidence, and he concluded that the . . . torture claim was speculative." *Id.* at 4. Further, the BIA reasoned, Mukhtorov had "not pointed to any specific evidence supporting his individualized claim of fear of torture, or specific evidence that the [IJ] may have overlooked." *Id.*

Mukhtorov has petitioned this Court for review.

## II.

We review only the decision of the BIA, except to the extent that the BIA expressly adopted or explicitly agreed with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). We review the IJ's opinion to the extent that the BIA has found that the IJ's reasons were supported by the record and review the BIA's decision as to those matters on which it rendered its own opinion and reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).

We review legal conclusions *de novo* and factual findings for substantial evidence. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). A claim that the agency failed to give reasoned consideration to a petitioner's claim for relief presents a question of law that we review *de novo*. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016).

Under the deferential substantial-evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (internal quotation marks omitted). We view the "evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* We will reverse an agency's factual finding "only if the evidence compels a reasonable fact finder to find otherwise." *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (internal quotation marks omitted). The

mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the agency's findings. *Adefemi*, 386 F.3d at 1027. "That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Id.* at 1029.

## III.

In his petition for review, Mukhtorov argues that there is not substantial evidence to support the BIA's decision. He argues that being beaten and hospitalized with injuries, as well as being forced to stop practicing his religion, "clearly rises to the level of persecution." Petitioner's Br. 11. For the same reason, he argues that he has established a well-founded fear of future persecution. Thus, he asserts, he is eligible for asylum and withholding of removal.[3] Mukhtorov also argues that the IJ gave inadequate consideration to his claim for CAT relief and that the BIA "failed to give any further consideration" to it. *Id.* at 13. For the following reasons, we reject Mukhtorov's arguments.

---

[3] Mukhtorov insists that his testimony "must be taken as fact" because the IJ found him to be credible. Petitioner's Br. 10. The BIA, however, merely "assume[d]" him to be credible. AR at 3. And because the BIA did not adopt the credibility determination of the IJ, we review only the BIA's credibility analysis. *Ayala*, 605 F.3d at 947–48. For the reasons set forth above, assuming as the BIA did that Mukhtorov credibly testified, the BIA's conclusion that he is ineligible for relief is still supported by substantial evidence.

*A. Asylum and Withholding of Removal*

Substantial evidence supported the BIA's rejection of Mukhtorov's application for asylum and withholding of removal. An applicant for asylum must meet the INA's definition of a refugee. 8 U.S.C. § 1158(b)(1). The INA defines a refugee as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). To meet the definition of a refugee, the applicant must, "with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omitted).

Past persecution creates a rebuttable presumption of a well-founded fear of future persecution. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). Even without a showing of past persecution, an asylum applicant may show a well-founded fear of future persecution by showing a fear of future persecution that is subjectively genuine and objectively reasonable. *Id.* The objective component requires that the applicant show a reasonable possibility of suffering persecution, either by being singled out for

persecution or being identified with a persecuted group. *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 965 (11th Cir. 2011).

Like the showing required for asylum, an applicant seeking withholding of removal must demonstrate that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). As with asylum, if an applicant establishes past persecution, a rebuttable presumption arises that his "life or freedom" would again be threatened upon removal. 8 C.F.R. § 208.16(b). Otherwise, the applicant must demonstrate that he would more likely than not be persecuted if returned to the country of removal. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004). Withholding of removal claims are governed by a "more stringent" standard than asylum claims. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1233 (11th Cir. 2005). If an applicant cannot meet the well-founded fear standard of asylum, he generally will not be eligible for withholding of removal. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009).

Persecution is an "extreme concept" that requires more than mere harassment, "a few isolated incidents of verbal harassment or intimidation," or "[m]inor physical abuse and brief detentions." *Id.* at 1353 (internal quotation marks omitted). Although physical injury is not required to prove past persecution where the petitioner demonstrates repeated threats combined with other forms of serious mistreatment, *De Santamaria*, 525 F.3d at 1009, a minor beating, even when viewed in conjunction with threats, does not

constitute persecution. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008).

Here, the record does not compel a finding that Mukhtorov suffered past persecution or has a well-founded fear of future persecution. Mukhtorov was beaten on one occasion and suffered injuries. He and his mother and sister also were harassed, and he was threatened with incarceration if he continued to practice his religion. Although we sympathize with Mukhtorov about these incidents, we cannot say that the evidence compels a conclusion that he has shown the kind of extreme harm necessary to constitute past persecution. *See id.* at 1171, 1174 (concluding that substantial evidence supported the BIA's conclusion that the petitioner had not shown past persecution when the petitioner was detained at a police station for 36 hours; forced to disrobe, beaten with a belt, and kicked; suffered multiple scratches to his neck and knees and multiple muscle bruises; was told that he "was going to rot in jail" if arrested again; and received medical treatment requiring two weeks of rest and several prescription medications (internal quotation marks omitted)); *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1288, 1291–92 (11th Cir. 2021) (holding that the record did not compel a finding that the petitioner was persecuted where he was beaten unconscious by governmental agents; sustained a laceration from the beating that his mother treated; was detained on multiple occasions; was interrogated for 20 hours while threatened with imprisonment, torture, or forced disappearance during one of the detentions; was fired from three jobs; and was forced to give up his phone and laptop to the government).

Substantial evidence also supports the BIA's conclusion that Mukhtorov did not demonstrate a well-founded fear of future persecution because his fear was not objectively reasonable. Without a showing of past persecution, he is not entitled to a presumption that his fear of future persecution is well-founded. *See De Santamaria*, 525 F.3d at 1007. The BIA agreed with the IJ that Mukhtorov's country conditions evidence "does not reflect the targeting, mistreatment, or persecution of persons simply because they are Muslim" such that his fear of returning to the country was objectively reasonable. AR at 4. The record does not compel us to conclude otherwise. Indeed, Mukhtorov acknowledged that he may be able to relocate within the country and that his mother had departed and later returned to Uzbekistan without major incident. Both acknowledgements support the BIA's conclusion that Mukhtorov's fear of persecution upon his return to Uzbekistan was not objectively reasonable.

Given the totality of the evidence in the record, we cannot disturb the BIA's conclusion that Mukhtorov failed to qualify for asylum. And, because he cannot meet the less stringent standard for asylum eligibility, he likewise cannot demonstrate his eligibility for withholding of removal. *See Kazemzadeh*, 577 F.3d at 1352.

*B. CAT Relief*

Mukhtorov also cannot establish that the BIA erred in its consideration of his claim for CAT relief.

An applicant seeking CAT relief must establish "that it is more likely than not that he or she would be tortured if removed

to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). All relevant evidence must be considered, including his ability to relocate and human rights violations within the country. *Id.* § 1208.16(c)(3). Although applications for CAT relief are reviewed under a different standard than asylum or withholding of removal, the BIA "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented," so long as it gives reasoned consideration to the petition and evidence as a whole. *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1332 (11th Cir. 2011) (internal quotation marks omitted); *see Malu v. U.S. Att'y. Gen.*, 764 F.3d 1282, 1292–93 (11th Cir. 2014) (rejecting a petitioner's challenge that the BIA failed to give reasoned consideration to his CAT claim, explaining that the petitioner "fail[ed] to appreciate that, before deciding whether she was entitled to protection under [CAT], the Board exhaustively discussed her application for withholding of removal based upon the same set of facts"), *abrogated in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023).

Mukhtorov's application for asylum and withholding of removal was based on the same set of facts as his request for CAT relief, and the BIA's discussion of his CAT claim followed its detailed discussion of his application for asylum and withholding of removal. Under these circumstances, the BIA was not obligated to conduct a detailed independent analysis of the CAT claim. *Carrizo*, 652 F.3d at 1332. In any event, the BIA provided enough analysis "to enable [our] review." *Malu*, 764 F.3d at 1293. Noting that the IJ had concluded that Mukhtorov's "torture claim was speculative,"

the BIA reasoned that Mukhtorov had "not pointed to any specific evidence supporting his individualized claim of fear of torture, or specific evidence that the [IJ] may have overlooked." AR at 4. The BIA was correct in its reasoning, and in fact Mukhtorov does not point us to anything in the record that the IJ may have overlooked. We therefore reject his challenge to the BIA's dismissal of his claim for CAT relief.

## IV.

In sum, Mukhtorov's petition for review is denied.

**PETITION DENIED.**